SPERRY OIL & GAS CO. et al. v. CHISHOLM et al.*

(Circuit Court of Appeals, Eighth Circuit. July 3, 1922.)

No. 6017.

**1. Indians ⊙16(3)—Indian allottee's lease of "homestead," not signed by wife, void, though approved by Secretary of the Interior.**

Under Oklahoma Enabling Act June 16, 1906, § 21, Const. Okl. art. 12, §§ 1, 2, and Rev. Laws Okl. 1910, §§ 1143, 3342, 3343, a renewal of an oil and gas lease, executed by the husband on the homestead without the wife joining therein, was void, though the husband was an Indian allottee and the land was his "homestead allotment," within Act July 1, 1902, § 72, and Act May 27, 1908, §§ 1, 2, providing that allottee may lease such land with the approval of the Secretary of the Interior, and though such renewal lease was signed by the Secretary of the Interior, since such federal statutes are not repugnant to the laws of Oklahoma relating to homesteads, and requiring leases to be signed by both husband and wife; the words "homestead" and "surplus," in allotments made to Indians, having been used merely to classify the lands, and the real homestead to which

---

⊙For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

*Rehearing denied October 21, 1922.

a citizen of the state is entitled being the homestead created by the state laws.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Homestead.]

2. Evidence ⊜⟶11—Judicial notice taken that many citizens of Oklahoma who framed Constitution were Indians.

The Circuit Court of Appeals will take judicial notice that a large portion of the citizens of the territory of Oklahoma and the Indian Territory who framed the constitution were Indians, who owned their own homes.

3. Homestead ⊜⟶122—Husband and wife held not estopped to deny validity of oil and gas lease on homestead for failure of wife to join therein.

Where wife had no knowledge that oil and gas lease on homestead had been renewed by the husband, before the expiration of the original lease, and received no part of the royalties, and there was no showing that the lessees would not have taken such lease, but for the conduct of the husband and wife, the husband and wife were not estopped from asserting the invalidity of the deed for failure of the wife to join therein.

Appeal from the District Court of the United States for the Eastern District of Oklahoma; Robert L. Williams, Judge.

Action by Pearl Chisholm and another against the Sperry Oil & Gas Company and another. Judgment for plaintiffs (Chisholm v. Creek & Indiana Development Co., 273 Fed. 589), and defendants appeal. Affirmed.

Preston C. West, of Tulsa, Okl. (Alvin Richards, A. A. Davidson, Roger S. Sherman, and Grey Moore, all of Tulsa, Okl., on the brief), for appellants.

J. Howard Langley, of Pryor, Okl. (Harve N. Langley, of Pryor, Okl., and S. R. Lewis and O. S. Booth, both of Tulsa, Okl., on the brief), for appellees.

Before CARLAND and KENYON, Circuit Judges, and JOHNSON, District Judge.

CARLAND, Circuit Judge. This is an appeal from a decree adjudging appellants to have no interest in or right of possession to the real estate hereinafter mentioned and enjoining them from interfering with appellees' full and exclusive possession thereof. The facts as found by the trial court are as follows:

"That the real estate involved in this cause, viz. the south half of the southeast quarter of section 13, township 21 north, and range 12 east, situs in Tulsa county, Oklahoma, is the allotment of the plaintiff, Webster Chisholm, a half-blood Cherokee Indian, whose Cherokee citizen roll number is 30,871, said lands being regularly conveyed to him by the Cherokee Nation as his said allotment and distributive share of the tribal lands of said Nation or Tribe of Indians, and that, of the aforesaid 80 acres of land, the following parcel constitutes his tribal homestead allotment, viz.: The west half of the *southwest quarter of the southeast quarter and the southeast quarter of the southwest quarter of the southeast quarter* of said section, township, range, and county, and that the remainder of said 80 acres of land constitutes the tribal surplus allotment of said Webster Chisholm. That upon May 14, 1904, the plaintiff Webster Chisholm, whilst a single person, executed an oil and gas lease covering all of said 80 acres of lands aforedescribed, in favor of defendant Creek & Indiana Development Company, a corporation, said lease being duly approved by the Secretary of the Interior on May 4, 1905, and that

⊜⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

said lessee entered upon said premises and explored and discovered oil in paying quantities; that the said lessee, Creek & Indiana Development Company, a corporation, thereafter, on July 18, 1914, sold and assigned its rights and interest in said lease unto the defendant Sperry Oil & Gas Company, a corporation; and that thereafter, on November 25, 1918, the said assignee, Sperry Oil & Gas Company, a corporation, sold and assigned its rights and interest in said lease unto the defendant Oklahoma Producing & Refining Corporation of America, a corporation, and that the last-named assignee has continued to and is now operating said lease for oil and gas as afterward modified and attempted to be extended, and removing oil and gas from said lands. That the lease executed by the plaintiff Webster Chisholm upon May 14, 1904, aforesaid, was made for a definite period of 15 years from its date, and that said lease expired, terminated, and ended on May 14, 1919. That upon the 11th day of November, 1911, the plaintiffs, Webster Chisholm and Pearl Chisholm were legally married, and that the plaintiffs moved upon the lands involved in this cause in the spring of the year 1912, and then and there the state homestead status attached thereto, and that they have continuously and uninterruptedly since then and to this time occupied the aforedescribed land as their home and homestead under the state law. That neither of the plaintiffs have or possess any other real estate than that involved in this suit. That the plaintiffs have from their occupancy of said lands in the spring of year 1912 claimed the aforesaid land as their homestead, and that said lands have constituted their homestead under the Constitution and statute laws of Oklahoma from their occupancy thereof in the spring of year 1912, and have so continued to be occupied by them as their homestead, and now constitutes the same, and was such homestead at the time the supplemental contract was executed by Webster Chisholm.

"The court further finds that upon March 9, 1914, the plaintiff Webster Chisholm signed, executed, and delivered unto defendant Creek & Indiana Development Company, a corporation, an instrument in writing under its terms extending in force, as long as oil or gas is found in paying quantities, the lease aforementioned, and that said instrument, under such terms extending in force as long as oil or gas is found in paying quantities the lease aforementioned (the lease so extended being dated May 14, 1904), increased the royalty from one-tenth of the total production to one-eighth of the total production; that said instrument providing for the extending in force and continuing the terms of the original lease dated May 14, 1904, was not executed or joined in by the plaintiff Pearl Chisholm, his wife, but executed only by the said Webster Chisholm; that the said Pearl Chisholm, the then wife of the said Webster Chisholm, did not join in the execution of said instrument, nor did she give her consent thereto, nor did she have knowledge thereof, and that the said Pearl Chisholm had no knowledge of the existence of said instrument extending in force and continuing the terms of said lease until after May 14, 1919, and just prior to the beginning of this action; and the court further finds that the instrument dated March 9, 1914, extending in force and continuing the terms of the original lease aforesaid, is null and void, for the reason that the wife of the said Webster Chisholm, viz. the said Pearl Chisholm, did not join in the execution of the same."

There was no provision in the original lease stipulating for an extension or renewal thereof. The ruling of the trial court, holding the renewal lease void because Pearl Chisholm did not join therein, is assigned as error. The ultimate question presented is whether the laws of Oklahoma relating to the conveyance of the homestead as defined by said laws are repugnant to the laws of Congress regulating the leasing of restricted Indian lands; the word "restricted" meaning, in this connection, lands that were nonalienable for the period of 25 years from date of allotment. The laws of Congress providing for the leasing of restricted Indian allotments at the time of the lease of May 14, 1904, and the renewal thereof March 9, 1914, were as follows:

By the Cherokee Agreement (Act of Congress approved July 1, 1902, 32 Stat. 716), the allotment of Webster Chisholm was restricted as to alienation, and by section 72 of the said Agreement it was provided:

"Cherokee citizens may rent their allotments when selected for a term not to exceed * * * ; but leases for a period longer than one year for grazing purposes and for a period longer than five years for agricultural purposes and for mineral purposes may also be made with the approval of the Secretary of the Interior, and not otherwise."

By section 1 of the Act of Congress approved May 27, 1908 (35 Stat. 312), the restrictions on the 50 acres embraced in the lease designated as surplus allotments were removed, but the restrictions remained upon the 30 acres designated as a homestead allotment. Section 2 of the same act provided:

"That leases of restricted lands for oil, gas or other mining purposes, leases of restricted homesteads for more than one year, and leases of restricted lands for periods of more than five years, may be made,/ with the approval of the Secretary of the Interior, * * * and not otherwise."

The regulation of the Secretary of the Interior, where restrictions were removed from a part of the land included in a lease for oil, gas, and other mineral purposes, was as follows:

"In event restrictions are removed from a part of the land included in a lease for oil, gas or other mineral purposes, the entire lease shall continue subject to approval and supervision of the Secretary of the Interior, and all royalties thereunder shall be paid to the Indian agent until such time as the lessor and lessee shall furnish the Secretary of the Interior satisfactory information that adequate arrangements have been made to account for the oil, gas, or mineral upon the restricted land separately from that upon the unrestricted. Thereafter the restricted land only shall be subject to the supervision of the Secretary of the Interior, provided that the unrestricted portion shall be relieved from such supervision as in the' lease or regulations provided."

It does not appear that the lessor and lessee in the case now under consideration ever furnished the Secretary of the Interior satisfactory information that adequate arrangements had been made to account for the oil, gas, or mineral upon the restricted land separately from that upon the unrestricted. The laws relating to the creation of a homestead and the conveyance thereof in the state of Oklahoma are as follows:

The Oklahoma Enabling Act, approved June 16, 1906, by section 21, provided as follows:

" * * * And all laws in force in the territory of Oklahoma at the time of the admission of said state into the Union shall be in force throughout said state, except as modified or changed by this act or by the Constitution of the state. * * *" 34 Stat. 277.

The Constitution of the state of Oklahoma (article 12, § 1) defines the homestead as follows:

"The homestead of any family in this state, not within any city, town, or village, shall consist of not more than one hundred and sixty acres of land, which may be in one or more parcels, to be selected by the owner. * * * That nothing in the laws of the United States, or any treaties with the Indian Tribes in the state, shall deprive any Indian or other allottee of the benefit of the homestead and exemption laws of the state." (Italics ours.)

The above section of the Constitution was also enacted into the Revised Statutes of Oklahoma of 1910, appearing as section 3343. Section 2 of article 12, Constitution of Oklahoma, provides as follows:

"The homestead of the family shall be, and is hereby protected from forced sale for the payment of debts, except for the purchase money; * * * nor shall the owner, if married, sell the homestead without the consent of his or her spouse, given in such manner as may be prescribed by law."

Section 3342 of the Revised Laws of Oklahoma provides as follows:

"The following property shall be reserved to the head of every family residing in the state exempt from attachment .or execution and every other species of forced sale for the payment of debts, except as hereinafter provided:
 "First. The homestead of the family, which shall consist of the home of the family, whether the title to the,same shall be lodged in or owned by the husband or wife."

At the time of the admission of the state of Oklahoma into the Union there was in force section 880, Wilson's Revised Laws of Oklahoma of 1903, which contained the following language:

" * * * And no deed, mortgage or contract relating to the homestead exempt by law, except a lease for a period not exceeding one year, shall be valid unless in writing and subscribed by both husband and wife, where both are living and not divorced, except to the extent hereinafter provided."

[1] Section 1143, Rev. Laws of Oklahoma of 1910, contains this same provision, with the addition of the words "or legally separated," which laws were in force and effect at the time of the execution of the renewal lease of March 9, 1914. It clearly appears from the laws thus quoted that, so far as the laws of Oklahoma are concerned, the renewal lease was void. The question now presented is whether section 72 of the Cherokee Agreement or section 1 of the Act of Congress approved May 27, 1908, supra, are repugnant to and inconsistent with the provisions of the laws of Oklahoma which declare that no deed, mortgage, or contract relating to the homestead exempt by law shall be valid, unless in writing and subscribed by both husband and wife. Does the provision of the state law in regard to the conveyance or leasing of the homestead prevent or hinder in any way the Secretary of the Interior from exercising his full power and authority under the laws of Congress referred to? It appears to us that they do not. We cannot see why the provisions of both state and federal law may not be given full force. Both provisions have for their object the same ultimate result. If the renewal lease had been executed by Pearl Chisholm, it still would have been subject to the approval of the Secretary of the Interior; and it is nowhere claimed that the approval of the Secretary, standing alone, would make a contract between the contracting parties. A valid contract must have been made by the parties themselves, so that, when it was presented to the Secretary of the Interior for his approval, it might come in the form of a valid contract made between the parties, but subject to the approval of the Secretary before it should become effective. In the present instance the alleged contract came to the Secretary in the form of a lease, but void under the laws of Oklahoma. The Secretary's approval could not remedy the want of power in Webster Chisholm to make the lease. We think

the case of Jennings v. Wood et al., 192 Fed. 507, 112 C. C. A. 657, decided by this court, is very much in point. In the case cited it was held that under section 72, heretofore quoted in this opinion, the approval of the Secretary would not validate a lease which was invalid because the lessor was a minor and not competent to make it. In delivering the opinion of the court in the case cited, Judge Hook used the following language:

"The jurisdiction of the Secretary of the Interior is only that expressed in the acts of Congress. He was not constituted the general guardian of the estates of the Indians in the sense in which that term is usually employed. Power was not conferred upon him to originate and make leases of allotted lands. That was left to the Indians subject to his approval in specified cases. If an Indian did not desire to lease there was nothing for the Secretary to act upon; if he did, and the lease was for oil and gas, its validity depended on the approval of that official, but he was not one of the contracting parties. On the contrary, his connection with the transaction and his authority first arose after the minds of the contractors came together, and they must have been competent to make the contract submitted for approval. A disapproval was merely a veto. An approval which proceeds upon a consideration of the terms of the instrument offered and whether they are reasonably for the interests of the Indian was intended as an additional safeguard for his protection. It would not, however, reach back and supply or confirm all the essential, legal prerequisites of a valid contract."

The present case is not similar to the case of Blanset v. Cardin et al., 261 Fed. 309, decided by this court and affirmed by the Supreme Court May 16, 1921, 256 U. S. 319, 41 Sup. Ct. 519, 65 L. Ed. 950. In the Blanset Case the regulations of the Secretary of the Interior authorized by Congress provided that an Indian married woman could by will dispose of all of her allotted land. A law of Oklahoma provided that no woman while married should bequeath more than two-thirds of her property away from her husband. It was decided in that case that the provisions of the law of Oklahoma restricting the right of a married Indian woman to dispose of her property by will was repugnant and inconsistent with the rights conferred by the regulations of the Secretary of the Interior. In such a case, of course, the conclusion reached by this court was correct, as the regulations of the Secretary of the Interior, having been made by the authority of Congress, had the force of law and were deemed made for the protection of the Indians and their property, during the period of restriction on alienation. By section 1 of the Act of May 27, 1908, supra, the restriction on 50 acres of the land in controversy was removed, so at the time the renewal lease was made only 30 acres of the land were restricted and the Cherokee Agreement and the Act of 1908 only refer to restricted lands, therefore 50 acres were subject only to the laws of Oklahoma, and the renewal lease would be void as to those acres in any event, and we are of the opinion that it was void as to all, because the parties to the pretended renewal contract had no contract to present to the Secretary of the Interior for approval. We do not think the regulations of the Secretary of the Interior, quoted in this opinion as applicable to cases where part of the lands subject to an oil and gas lease have been removed, have the effect to reimpose a restriction which Congress has removed. We take the regulation to mean that, if the parties do not

agree upon any other way for accounting for the oil, gas, or mineral from the restricted lands separate from the unrestricted lands, they will be deemed to have consented that the Secretary of the Interior still shall have that duty to perform. Before the state of Oklahoma could be admitted to the Union, its Constitution, especially where the rights of the United States or of the Indian tribes in Oklahoma were concerned, had to be accepted by the United States. There was a provision of the Constitution of Oklahoma (section 1, art. 12) that nothing in the laws of the United States or any treaties with the Indian Tribes in the state should deprive any Indian or other allottee of the benefit of the homestead and exemption laws of the state.

[2] This court will take judicial notice that a large portion of the citizens of the territory of Oklahoma and the Indian Territory who framed the Constitution of Oklahoma were Indians who owned their own homes and lands, and that this provision of the Constitution was undoubtedly placed in the Constitution by such Indian citizens for their own protection. This we think is a legitimate argument to make in favor of the proposition that Congress never intended by law or regulation to deprive any Indian or other allottee in Oklahoma of the benefit of the homestead and exemption laws of the state. The use of the words "homestead" and "surplus" in allotments made to Indians was in order to classify the lands. The real homestead which a citizen of Oklahoma is entitled to is created by the laws of the state.

[3] It is next claimed that appellees are estopped from claiming that the renewal lease is void. Webster Chisholm received all the royalties accruing in the original lease and the attempted extension thereof, but his wife, Pearl Chisholm, received no part thereof. The trial court found that after the expiration of the lease of May 14, 1904, which was May 14, 1919, the land produced $22,944.40 of oil for the period of about seven months, and Webster Chisholm received the stipulated royalty on this oil, and therefore the court denied him any portion of the value of the oil, except the royalty. We do not think that an estoppel as to the land can be urged against the appellees, for the reason that Pearl Chisholm, the wife of Webster Chisholm, had no knowledge of the renewal lease dated March 9, 1914, no knowledge of the operation of the lessee under the same, and in no way directly or indirectly encouraged the lessee in such operation. Appellants obtained this renewal lease more than five years before the expiration of the original lease. Any operations of the appellants in the production of oil would not attract the attention of any one knowing that the original lease did not expire until 1919. In addition to the lack of knowledge on the part of Pearl Chisholm, against whom estoppel is urged, there is an entire absence of evidence on the part of appellants that they would not have done the things they did, but for the conduct of the parties sought to be estopped.

Counsel for appellants further urge that, in case the court should be of the opinion that the renewal lease was void, and that the appellees are not estopped, the court, as a court of equity having full control of the case, ought to mold the relief so as to give appellees the possession of their homestead, but still at the same time grant to the

appellants the right to extract oil under the renewal lease, as that would not interfere with the homestead rights of appellees. If the renewal lease is void, and we decide that it was and is, this court has no power to confer any rights upon the appellants, and thus violate on its part the laws of Oklahoma.

We are clearly of the opinion that the judgment of the lower court, holding the renewal lease void, was correct, and its judgment is affirmed.