SPERRY OIL & GAS COMPANY ET AL. *v.*
CHISHOLM ET AL.

APPEAL FROM AND CERTIORARI TO THE CIRCUIT COURT OF
APPEALS FOR THE EIGHTH CIRCUIT.

No. 164. Argued January 16, 1924.—Decided April 7, 1924.

1. A final decree of the Circuit Court of Appeals in a suit removed
to the District Court upon the ground that it arose under the laws
of the United States, *held* reviewable here by appeal and not by
certiorari. P. 490.

2. Under the constitution and statutes of Oklahoma, the family
homestead of an Indian may include his tribal " homestead "
allotment as well as his tribal " surplus " allotment; and a lease,
invalid because executed by the husband alone, may be set aside
in a suit brought by the husband and wife, unless she is estopped
by her acts and conduct from asserting its invalidity. P. 492.

3. The power of Congress to deal with the Indians in Oklahoma as
a dependent people and legislate concerning their property with
a view to their protection, was reserved by the Oklahoma Enabl-
ing Act, the terms of which were accepted by an ordinance of the
constitutional convention of Oklahoma later ratified with the
constitution of the State. P. 493.

4. The authority given by the Act of Congress of May 27, 1908, to
a Cherokee Indian of the half-blood to make an oil and gas lease
upon his restricted " homestead " allotment, with the approval of
the Secretary of the Interior, cannot be limited or contravened by
the provision of the Oklahoma law attaching to the execution of a
lease upon 'the family homestead the condition that it must be also
executed by his wife. P. 494.

5. The provision of the Oklahoma Enabling Act that all laws in force
in Oklahoma Territory at the time of the admission of the State
should be in force throughout the State, " except as modified or
changed by this Act or by the constitution of the State ", related
only to laws affecting the citizens of the State generally, and did
not authorize the application of such laws in contravention of acts
passed by Congress in reference to the property of Indians under
the power expressly reserved in the Enabling Act itself. P. 496.

6. The provision in the Oklahoma constitution that nothing in the
laws of the United States shall deprive any Indian or other allottee

of the benefit of the homestead laws of the State cannot give validity to laws of the State repugnant to the reserved powers of the United States in legislating in respect of the lands of Indians. P. 497.

7. The " surplus " allotment of a half-blood Cherokee, upon being freed from all federal restrictions by the Act of May 27, 1908, *supra,* became subject to the laws of Oklahoma like property of other citizens, including the law (*supra,* par. 2) restricting the disposition of family homesteads. P. 497.

8. Regulations of the Secretary of the Interior providing that if restrictions were removed from part of the land included in an oil and gas lease, the entire lease should continue subject to approval and supervision and all royalties thereunder be paid to the Indian agent until lessor and lessee arranged for separate accountings upon the restricted and unrestricted land, *held* not to relieve a lease, as to the unrestricted land included, from invalidity under the Oklahoma family homestead law. P. 498.

9. Where an oil and gas lease of land is found invalid under the family homestead law, the court cannot permit the lessees to continue extracting oil and gas upon the condition that they do not interfere with the owners' use of the surface as a homestead. P. 498.

282 Fed. 93, affirmed in part and reversed in part; certiorari dismissed.

APPEAL from a decree of the Circuit Court of Appeals affirming a decree of the District Court, which canceled a lease made by an Indian of his homestead and surplus allotments,—together constituting his family home-stead,—upon the ground that, not being executed by his wife, the instrument was invalid under the Oklahoma family homestead law. Certiorari also was granted.

*Mr. Preston C. West,* with whom *Mr. Alvin Richards* and *Mr. A. A. Davidson* were on the brief, for appellants and petitioners.

*Mr. H. L. Underwood,* Special Assistant to the Attorney General, with whom *Mr. Solicitor General Beck* was on the brief, for the United States, by special leave of Court, as *amici curiae.*

*Mr. J. Howard Langley,* with whom *Mr. Harve N. Langley, Mr. S. R. Lewis* and *Mr. O. S. Booth* were on the brief, for appellees and respondents.

MR. JUSTICE SANFORD delivered the opinion of the Court.

The appellees, Webster Chisholm, a half-blood Cherokee Indian, and his wife, brought this suit in a state court of Oklahoma to cancel a supplemental instrument modifying and extending an oil and gas lease previously executed by him upon his " homestead " and " surplus " allotments of tribal lands. It was removed to the Federal District Court. That court, upon final hearing, entered a decree adjudging this instrument to be entirely null and void, and enjoining interference with the plaintiffs' possession of the premises.[1] This decree was affirmed by the Circuit Court of Appeals. 282 Fed. 93. An appeal to this Court was allowed by a Circuit Judge; and thereafter the appellants were also granted a writ of certiorari. 261 U. S. 611.

As the suit was removed to the federal court upon the ground that it arose under the laws of the United States,[2] the decree of the Circuit Court of Appeals was not made final by the provisions of § 128 of the Judicial Code and § 3 of the Act of September 6, 1916, c. 448, 39 Stat. 726. *Southern Pacific Co.* v. *Stewart,* 245 U. S. 562. Therefore the appeal was properly allowed under § 241 of the Judicial Code; and the writ of certiorari must be dismissed.

Chisholm is an enrolled citizen of the Cherokee Nation, of the half-blood. Pursuant to the Cherokee Agreement—embodied in the Act of July 1, 1902, c. 1375, 32

---

[1] See *Chisholm* v. *Creek & Indiana Development Co.* (D. C.) 273 Fed. 589, the opinion on interlocutory hearing. The Development Co., although named as a defendant in the original petition, was not served with process and did not enter its appearance, and the case was heard only as to the other two defendants, the appellants here.

[2] See *McCune* v. *Essig,* 199 U. S. 382.

Stat. 716—he was allotted two tracts of tribal lands: one of thirty acres designated as a "homestead"; and another adjoining tract of fifty acres designated as "surplus". The alienation of both of these tracts was then restricted. In 1904, while unmarried, he executed an oil and gas lease for a term of fifteen years to the Creek & Indiana Development Co., covering, as an entirety, the eighty acres of his two allotments. It contained no provision for an extension or renewal. This lease was approved by the Secretary of the Interior. Chisholm married in 1911. In 1912, he and his wife moved upon the leased land, and have since that time occupied and claimed the entire eighty acres as a family homestead. Their residence is upon the "homestead" thirty acres, the cultivated land and pasture extending upon the "surplus" fifty acres. Neither owns any other land. In 1914—more than five years before the expiration of the lease—the lessee having found oil in paying quantities and completed the drilling of five wells, Chisholm executed a written instrument modifying the terms of the lease, in accordance with regulations prescribed by the Secretary of the Interior, so as to provide for an increased royalty and extend the lease as long as oil or gas should be found in paying quantities. This instrument—hereinafter called the extension lease—was approved by the Secretary of the Interior as to the "homestead" thirty acres, which was still restricted land; but was neither approved nor disapproved by him as to the "surplus" fifty acres, from which the restrictions had previously been removed. It was not, however, executed or joined in by his wife. Later in the same year the Development Company assigned the lease to the Sperry Oil & Gas Co.; and that Company in 1918 assigned it to the Oklahoma Producing & Refining Corporation. The suit was commenced in 1919, about three months after the expiration of the term of the original lease. The lessees had then driven eleven wells on the leased premises

and removed a large amount of oil. All royalty due under the leases at the original and increased rates had been paid by the lessees to Chisholm, or to the Indian agent for his benefit, and had been received by Chisholm; and such payments were continued to the time of the trial. His wife, however, received no part of this royalty, and did not learn that he had extended the original lease until shortly before the commencement of the suit.

1. The ground of decision in both the lower courts was that the extension lease executed by Chisholm was void under the provisions of the constitution and laws of Oklahoma relating to family homesteads because it was not joined in or consented to by his wife. The constitution of Oklahoma provides that the rural homestead of any family in the State " shall consist of not more than one hundred and sixty acres of land, . . . in one or more parcels, to be selected by the owner; " and that " nothing in the laws of the United States . . . shall deprive any Indian or other allottee of the benefit of the homestead and exemption laws of the State." Art. 12, § 1. These provisions are also contained in the state statutes. 1 Rev. Laws, 1910, § 3343, p. 834. The family homestead of an Indian under the state law may include his tribal " homestead " allotment as well as his tribal " surplus " allotment. *Hyde* v. *Ishmael,* 42 Okla. 279; *Norton* v. *Kelley,* 57 Okla. 222; *Belt* v. *Bush* (Okla.), 176 Pac. 935. It is further provided by a statute originating in the territorial session laws of 1901, c. 10, p. 78, that " no deed, mortgage or contract relating to the homestead ", except a lease for not exceeding one year, " shall be valid unless in writing and subscribed by both husband and wife." 1 Rev. Laws, 1910, § 1143, p. 292. This applies to oil and gas leases covering the homestead. *Carter Oil Co.* v. *Popp* (Okla.), 174 Pac. 747; *Rich* v. *Doneghey* (Okla.), 177 Pac. 86; *Treese* v. *Shoemaker,* 80 Okla. 235. And, the interest of the husband and wife in

the homestead not being severable, a lease or other contract relating to the homestead executed by the husband alone, may be set aside in an action brought by the husband and wife, unless she is estopped by her acts and conduct from asserting its invalidity. *Hall* v. *Powell,* 8 Okla. 276; *Kelly* v. *Mosby,* 34 Okla. 218; *Brusha* v. *Board of Education,* 41 Okla. 595; *Hyde* v. *Ishmael, supra; Carter Oil Co.* v. *Popp, supra.*

2. In our opinion, however, these provisions of the constitution and laws of Oklahoma have no application to so much of the extension lease as covers the tribal "homestead" of thirty acres.

By the Oklahoma Enabling Act of June 16, 1906, c. 3335, 34 Stat. 267, it was provided that nothing in the constitution of the State should be construed to limit or affect the authority of the Government of the United States to make any law or regulations respecting the Indians of the Territory, their lands, property or other rights, which it would otherwise have been competent to make. (§ 1.) The terms and conditions of the Enabling Act were accepted by the Constitutional Convention of Oklahoma by an "irrevocable" ordinance, which was ratified with the constitution itself. *Coyle* v. *Oklahoma,* 221 U. S. 559, 564; *Jefferson* v. *Winkler,* 26 Okla. 653, 662; *Molone* v. *Wamsley,* 80 Okla. 181, 182. Congress was thus careful to preserve to the United States the authority over the Indians, their lands and property, which it possessed prior to the passage of the Enabling Act: retaining full power, which it had exercised from the earliest period, to deal with them as a dependent people and legislate concerning their property with a view to their protection; with the right to determine when, in their interest, the Government guardianship should cease, and plenary authority, notwithstanding the bestowal of federal citizenship upon them, to place restrictions upon their right of alienating the lands allotted to them. *Tiger* v. *Western*

*Investment Co.,* 221 U. S. 286, 309; *Heckman* v. *United States,* 224 U. S. 413, 416. And in all matters relating to the restrictions upon their allotted lands resort must be had to the acts of Congress and to those acts alone. *Walker* v. *Brown,* 43 Okla. 144; *Collins Inv. Co.* v. *Beard,* 46 Okla. 310; *Wilson* v. *Greer,* 50 Okla. 387; *Smith* v. *Williams,* 78 Okla. 297; *Molone* v. *Wamsley, supra.*

By the Act of May 27, 1908, c. 199, 35 Stat. 312—which was in force when the extension lease was executed—it was provided that the "homesteads" allotted to members of the Five Civilized Tribes of the half-blood should not be subject to alienation or incumbrance prior to April 26, 1931, unless such restrictions were removed by the Secretary of the Interior; but all restrictions upon the alienation or incumbrance of their other allotted lands were removed. § 1. And it was further provided that "leases of restricted lands for oil, gas or other mining purposes . . . may be made, with the approval of the Secretary of the Interior, under rules and regulations provided by the Secretary of the Interior, and not otherwise". § 2. No other conditions were attached to the making of such leases.

The authority thus given by the act of Congress to an Indian of the half-blood to make an oil and gas lease upon his restricted "homestead" allotment, with the approval of the Secretary of the Interior, cannot be limited or contravened by the provision of the Oklahoma law attaching to the execution of a lease upon the family homestead the condition that it must also be executed by his wife. This added requirement is inconsistent with the authority given the allottee by the act of Congress to make such lease when approved by the Secretary of the Interior, and, if the wife does not consent to the lease, would entirely defeat the purpose of Congress. As applied to an oil and gas lease made by such an allottee upon his restricted "homestead", the provision of the Oklahoma

law is hence invalid because of its repugnancy to the paramount act of Congress. " The power of Congress to impose restrictions on the right of Indian wards of the United States to alien or lease lands allotted to them in the division of the lands of their tribe is beyond question; and of course it is not competent for a State to enact or give effect to a local statute which disregards those restrictions or thwarts their purpose." *Bunch* v. *Cole,* 263 U. S. 250, 252.

On the precise question of the effect of a state law which, if applicable, adds a condition to the exercise by an Indian allottee of rights granted him by an act of Congress, the decision in *Blanset* v. *Carden,* 256 U. S. 319, 324, 326, is controlling. There an act of Congress gave Indians the right to dispose of their restricted allotments by will, in accordance with the regulations prescribed by the Secretary of the Interior and subject to his approval. And it was held that a will made by an Indian woman, which was approved by the Secretary of the Interior, devising her restricted lands to others than her husband, was not invalidated by a provision of the Oklahoma code that no married woman should bequeath more than two-thirds of her property away from her husband. The Court said: " The Secretary of the Interior made regulations which were proper to the exercise of the power conferred upon him . . . and it would seem that no comment is necessary to show that [the provision of the Oklahoma Code] is excluded from pertinence or operation. . . . In a word, the act of Congress is complete in its control and administration of the allotment and of all that is connected with or made necessary by it, and is antagonistic to any right or interest in the husband of an Indian woman in her allotment under the Oklahoma Code. . . . Our conclusion is . . . that it was the intention of Congress that this class of Indians should have the right to dispose of property by will under

this act of Congress, free from restrictions on the part of the State as to the portions to be conveyed or as to the objects of the testator's bounty, provided such wills are in accordance with the regulations and meet the approval of the Secretary of the Interior."

So it was the intention of Congress that Indian allottees of the half-blood should have the right to make oil and gas leases upon their restricted "homestead" allotments, provided they are in accordance with the regulations of the Secretary of the Interior and are approved by him.

To the same effect are the decisions of the Supreme Court of Oklahoma. In *Walker* v. *Brown, supra,* at p. 146, the court, in holding that a restrictive provision of an Oklahoma statute was not intended to apply to the will of an Indian woman devising her "homestead" allotment under the authority given by the acts of Congress, said: "This court has repeatedly held that acts of Congress supplant the laws of Oklahoma in relation to Indians; that certain state laws which are applicable to every other citizen are not in force as against or pertaining to the Indians of the Five Civilized Tribes, and that we have here, respecting some matters, two classes of citizens and two legislative sovereignties. . . . It is obvious that, if the state law were given the construction contended for, it would have the effect of interfering with the policy of the Congress toward the Indians in the matter of the alienation of their allotted lands." This case was approved and followed in *Brock* v. *Keifer,* 59 Okla. 5, 8. And in *Molone* v. *Wamsley, supra,* at p. 183, it was said that it is "beyond the power of the Legislature to enact any law invalidating or affecting" conveyances by Indian heirs "made and approved in conformity with the acts of Congress." And see *Haddock* v. *Johnson,* 80 Okla. 250.

The Oklahoma statute derives no additional force as a restriction upon leases made by Indian allottees because it was in force as a territorial law at the time the Enabling

Act was passed, and that act provided that all laws in force in the Territory at the time of the admission of the State into the Union should be in force throughout the State "except as modified or changed by this act or by the constitution of the State." (§ 21.) Manifestly this provision related only to statutes affecting the citizens of the State generally and was not intended to authorize the application of such laws in contravention of the acts passed by Congress in reference to the property of Indians under the power expressly reserved in the Enabling Act itself. Nor can it have that effect. See *Truskett* v. *Closser,* 236 U. S. 223.

Nor is the validity of the extension lease affected by the provision in the Oklahoma constitution that nothing in the laws of the United States shall deprive any Indian or other allottee of the benefit of the homestead laws of the State. Whether or not this provision was intended to do more than to protect the allottees from the enforced seizure of their homesteads, it is sufficient to say that, whatever its purpose, it can have no more effect than the Oklahoma statute in giving validity to laws of the State repugnant to the reserved power of the United States in legislating in respect to the lands of Indians. Neither the constitution of a State nor any act of its legislature, whatever rights it may confer on Indians or withhold from them, can withdraw them from the operation of an act which Congress passes concerning them in the exercise of its paramount authority. *United States* v. *Holliday,* 3 Wall. 407, 419.

It results that the extension lease executed by Chisholm in 1914, which was made under the regulations of the Secretary of the Interior and was approved by him as to the "homestead" allotment of thirty acres, must be held to be valid as to such allotment.

3. As to the fifty acres of the "surplus" allotment, also included in the extension lease, an entirely different

97851°—24——32

question is presented. All restrictions upon this land had been removed by the Act of 1908. When the extension lease was executed there was no limitation under the acts of Congress upon Chisholm's right to alienate, encumber or lease this tract. It had become in all respects subject to his control, under the laws of the State, just as the property of other citizens. *Jefferson* v. *Winkler*, 26 Okla. 653, 664. All questions pertaining to its disposal fell under the scope and operation of those laws. *Dickson* v. *Luck Land Co.*, 242 U. S. 371, 375. And since his wife did not join in the execution of the extension lease, and there is nothing in her acts and conduct which estops her from asserting its invalidity, under the provisions of the Oklahoma statute, as interpreted and applied by the courts of the State, it must be held to be invalid as to the " surplus " allotment; and it was to that extent properly set aside.

The fact that the regulations of the Secretary of the Interior provided that if the restrictions were removed from a part of the land included in an oil and gas lease, the entire lease should continue subject to the approval and supervision of the Secretary of the Interior and all royalties thereunder should be paid to the Indian agent until the lessor and lessee made adequate arrangements to account for the oil and gas upon the restricted land separately from that upon the unrestricted, obviously adds nothing to the force of the extension lease in so far as it includes the fifty acres of " surplus " lands, and can have no effect in relieving it as to such lands from the invalidity attaching by reason of the noncompliance with the laws of the State.

And the extension lease being entirely invalid as to the " surplus " fifty acres, the court is without authority to permit the lessees to continue to extract oil and gas therefrom although done in such manner as not to interfere with the plaintiff's use of the surface as a homestead.

The decree of the Circuit Court of Appeals is affirmed as to so much of the extension lease as covers the fifty acres of the "surplus" allotment, and reversed as to so much of said lease as covers the thirty acres of the "homestead" allotment.

*Affirmed in part.*
*Reversed in part.*