## BILLY et ux. v. LeFLORE COUNTY GAS & ELEC. CO.

No. 29385.  June 24, 1941.

Rehearing Denied Oct. 21, 1941.

Dissenting Opinion Jan. 13, 1942.

Application for Leave to File Second Petition for Rehearing Denied Jan. 13, 1942.

*120 P. 2d 774.*

Anton Koch, of Henryetta, and Geo. S. Evans, Neal E. Maurer, and Chas. E. McPherren, all of Oklahoma City, for plaintiffs in error.

L. A. Rowland, of Bartlesville, N. A. Gibson, of Muskogee, Varner & Varner and J. S. Babb, all of Poteau, and Claude Briggs, of Oklahoma City, for defendant in error.

RILEY, J.  This is the fourth appeal to this court growing out of the controversy involved. The first appeal was from a decree canceling an oil and gas lease covering certain land owned by Albert Billy. That appeal was dismissed.

Thereby the decree, so far as it canceled the lease involved, became final about January, 1924. The decree in that case, in addition to canceling the oil and gas lease and quieting title to the land in Albert Billy and Dora Billy, his wife, provided:

". . . and the court does not now determine the rentals for said real estate or determine the value of the oil and gas taken from said lands, but leaves that question for future action between the parties. Done in open court this the 16th day of April, 1923."

In January this action was commenced against the Le Flore County Gas & Electric Company for an accounting for gas taken from the land during the years 1915 to 1923, inclusive. After issues were joined the trial court entered judgment for the gas company upon the record and pleadings.

The second appeal was from that judgment, and became Supreme Court case No. 20288; the judgment there appealed from was reversed. Billy v. Le Flore County Gas & Electric Co., 146 Okla. 227, 293 P. 1009. After the cause was remanded, trial was had and judgment entered for Billy. A motion for new trial was sustained and a new trial granted. Billy appealed. This appeal became cause No. 23990 in this court. The order granting a new trial was affirmed. Billy et al. v. Le Flore County Gas & Electric Co., 166 Okla. 130, 26 P. 2d 149.

After the mandate affirming the order granting a new trial, defendant, Le Flore County Gas & Electric Company, filed an amended answer setting up certain matters hereinafter stated.

In the meantime, C. J. Goeske obtained leave to intervene and filed his plea of intervention claiming an interest in whatever Billy might recover.

Nearly all the matters pleaded as a defense in the original answer were set up in the amended answer, and in addition thereto, defendant pleaded that on October 7, 1919, restrictions on the allotment of Albert Billy were removed, and that thereafter said Albert Billy had full right, without regard to the validity of the lease, to license defendant to continue to take gas from said land, and:

"Further answering, the defendant alleges and avers that if it be held that the decision of this court in cause No. 3629, hereinabove referred to, is the law of this case, which this defendant does not admit, yet nevertheless in equity and good conscience the plaintiffs should not be permitted to have and recover any sum whatsoever of and from this defendant for the reason that from the date of the removal of restrictions upon alienation from the said Albert Billy on the 7th day of October, 1919, until the time when this defendant ceased to produce or take gas from the said property, the said Albert Billy had a full and complete right, regardless of the alleged invalidity of the said lease, to license this defendant, for any valuable consideration paid to him, to continue to produce, from the well theretofore drilled upon the said land, gas, and to market the same, and that by the terms of the said oil and gas lease hereinabove referred to, which had been entered into in good faith by the plaintiff, Albert Billy and the lessee therein named, and which had been thereafter in good faith and for valuable consideration purchased by and assigned to this defendant, a gas royalty of $300 per annum for each producing gas well which might be drilled upon the said land was provided, and that the plaintiffs herein, with full power, right and authority to license the taking of gas from said land from the then existing well, did on and subsequent to the removal of restrictions upon the alienation of the said land or any interest therein, accept the payment of the said sum of $300 per annum as full, complete and adequate consideration for the taking of gas from said land by this defendant, and that the said license so granted to this defendant continued in full force and effect thereafter until this defendant ceased to take gas from the said well; and therefore the defendant alleges and avers that the plaintiffs should not recover of it any sum whatsoever for the reason that the plaintiffs have already been paid and have accepted full and complete payment for all of the rights, privileges and immuni-

ties granted to defendant by reason of the said license, with the exception of $200 out of the final payment of said license covering the period from May, 1922, to May, 1923, for which period $100 was paid in advance to the plaintiff Albert Billy, at his request, and accepted by him, and the remainder thereof tendered to him but refused; and defendant now again tenders the said sum of $200 and offers to pay the same into court in full and complete satisfaction of any and all obligation accruing to the plaintiffs or either of them by reason of the permissive taking of said gas from the land involved herein."

After certain allegations of the amended petition and motion of plaintiffs were stricken, plaintiffs and intervener replied by general and special denial, admitted certain allegations in the amended answer, and alleged that the decree of the district court in the first trial, which canceled the lease and reserved the question of accounting and quieted title in plaintiff became final and is res adjudicata in this suit as to plaintiff's right to an accounting; that the judgment is res adjudicata as to defenses herein and the legal right of plaintiff to institute and maintain the action for cancellation of the lease; as to the question of invalidity of said oil and gas lease; as to whether or not plaintiffs had by their acts and conduct prior to institution of the suit waived the right to institute the action for cancellation of the lease and an accounting for the gas taken from said land or were estopped from instituting and prosecuting the actions for said purposes; that the decree of the Supreme Court rendered on the first appeal in this action (Billy et al. v. Le Flore County Gas & Electric Co., supra) is res adjudicata as to the right of Goeske to intervene. Trial was had to the court without a jury, resulting in findings of fact, conclusions of law, and a judgment denying recovery in any sum.

Twelve assignments of alleged error are set up in the petition in error.

One of the assignments, upon which the first proposition presented is based, is that the court erred in each of its twelve findings of fact.

The first and second findings of fact are not assailed in the brief. The third finding of the trial court is challenged insofar as it finds that the decision of the court in the first trial decreeing the lease invalid (void) was "based upon the failure of Dora Billy, the wife of Albert Billy, to join in the lease."

It is asserted that the petition for cancellation of the lease set up three grounds for cancellation: (a) That the land was the homestead of Albert Billy and Dora Billy, his wife, and that Dora Billy did not join in the lease, and on that account the lease was void. (b) Failure to properly develop the land for oil and gas. (c) Failure to drill and operate wells offsetting gas wells drilled on adjacent lands or pay royalty for such failure as provided in the lease.

The trial court in the original decree made general findings in favor of plaintiff, and found:

"That all matters and things alleged and set forth in the petition of the plaintiffs are true, and said oil and gas lease, . . . and all assignments thereof as appear of record . . . are void and should be canceled."

The contention is that because the petition alleged grounds for cancellation other than the failure of the wife to join in the lease, and the court found generally that all the allegations in the petition were true, there is no basis for the finding of the court above stated.

The petition stated a ground upon which the lease could be held void under the state law, and that was failure of the wife to join in conveyance of the homestead. That law had, up to that time, been held applicable to all homesteads, including homestead allotments of restricted Indians. There may have been evidence sufficient to justify the cancellation of the lease, without regard to its validity when executed, on either or both of the other grounds. The evidence taken in the original case was not before the trial court in this case and is not in the case-made on

this appeal. The general finding of the court in the decree canceling the lease would indicate that there was such evidence, but if there was, it must have been directed to facts arising subsequent to the execution of the lease, and not to its validity in the first instance.

That part of the finding to the effect that the decision decreeing the lease invalid was based entirely upon failure of the wife to join in the lease is not sustained by the record.

Finding No. 4 is:

"That previous to the assignment of the said lease to the defendant, a producing gas well had been drilled upon the land in question by one of the former holders of the said lease, and that the said well was producing at the time of the assignment of said lease to defendant on July 25, 1918."

That part of said finding that "a producing gas well had been drilled upon the land in question by one of the former holders of the said lease, . . . "is assailed as being contrary to all the evidence and contrary to various admissions of defendant. The uncontradicted evidence is that the lease was dated October 24, 1912, and was approved by the Secretary of the Interior April 23, 1913. Nodak Oil Company was the lessee. It assigned the lease to S. S. Spruks December 8, 1913. Spruks assigned the lease to defendant July 25, 1918.

But one well was drilled on said land, that was early in 1915. Gas was first taken therefrom May 20, 1915, and was thereafter continuously taken until April 16, 1923. Therefore, the well was drilled while S. S. Spruks was legal owner of record of the lease.

In the answer of defendant in the original action it alleged:

"Further answering herein defendant states that it has expended large sums of money, to wit, about the sum of $_____, in drilling for gas on the leased lands of plaintiffs and in casing wells where gas was found so that the gas could be preserved and marketed."

In the first answer in this action, among other things, defendant alleged:

". . . This defendant states that plaintiffs at all times prior to the 24th day of February, 1923, treated the said lease contract as a valid contract, and without objection permitted this defendant to enter upon and drill a gas well upon said lands and to lay pipe lines thereon and take and transport the natural gas therefrom, . . . and that had it known that said plaintiffs did not intend to be bound thereby and expected in the future to repudiate their acts thereunder, this defendant would not have entered upon said lands and drilled the well, paid the royalties and expended the sums of money in the operation of its business. . . ."

In its amended answer herein filed August 10, 1936, defendant alleged:

"That previous to the said assignment to this defendant, to wit, on or about the 10th day of May, 1914, a well was drilled upon the said described land, from which natural gas was produced in paying quantities, and that the then owner of said lease, and subsequently after the said assignment to Le Flore County Gas & Electric Company, this defendant, took and sold natural gas therefrom, . . ."

It may be noted that defendant did not specifically allege that the well was drilled by Spruks.

Plaintiffs in their reply to the amended petition alleged that though the lease was assigned to Spruks by the Nodak Oil Company, Spruks was an officer and director of the defendant, and acted for and on its behalf, and that he took and held said lease for its use and benefit until in recognition of that fact he assigned the lease to the company.

At the trial, certain letters written by Spruks and his agent to the Department of Interior concerning the transaction were placed in evidence. Also a contract between Le Flore County Gas & Electric Company and S. S. Spruks. This contract and the letters clearly and conclusively show that

Spruks furnished the money with which to purchase the lease, along with other leases; that to secure him in the repayment of the money and interest thereon, said leases were purchased and recorded in the name of S. S. Spruks, and that said leases were purchased for the use and benefit of the Le Flore County Gas & Electric Company, and that Spruks agreed, upon full and complete payment to him by the Le Flore County Gas & Electric of $7,000 so advanced by him with interest at 10 per cent per annum, to be paid at the rate of $300 per month, to assign, transfer, and set over to the company said lease "so purchased in his name." This contract was dated June 3, 1914.

In a letter written by Spruks to Gabe Parker, Department of the Interior, Muskogee, dated October 31, 1916, the transaction is explained. These letters and the contract stand undenied and uncontradicted. They show conclusively that Spruks took and held title to the leases for the use and benefit of the company of which he was president. That he held title merely as security for the money advanced by him for the purchase price together with interest at 10 per cent.

The finding is, therefore, without support in evidence, but is directly contrary to the uncontradicted evidence and admissions of defendant. There is and can be no doubt that the well was in fact drilled by defendant company, and that the defendant took the gas from the well during the entire time.

The evidence shows, and plaintiff admits, that from and after May 20, 1915, down to May 20, 1922, payments of $300 each year in advance were made to and accepted by Albert Billy, and that defendant paid Albert Billy the sum of $100 in advance in part payment for the year beginning May 20, 1922, and that before May 20, 1922, defendant delivered to Albert Billy its check for $200 in payment for the balance of said year, but that Billy returned said check and demanded cancellation of the lease.

The trial court found:

"That the said payments so made were made to and received by the said Albert Billy each year in advance for the privilege of taking gas from the said land during the several years beginning on the 20th of May in each of said years, and extending one year thereafter, and that the said Albert Billy fully understood the value of the said payments so made to him, and that the same were paid to him for the privilege of taking the said gas, and that it is not contended that he was overreached or defrauded in any way into the acceptance of the said consideration for the said privilege of taking gas."

The court then made its conclusions of law. The first is:

"From the above findings the court concludes that the conduct of the parties amounted to the grant of a valid and legal license by the plaintiff Albert Billy to take from the well opened and producing at the time the defendant entered upon said premises, gas, for the consideration agreed upon between the said Albert Billy and the defendant, and actually paid to the said Albert Billy by the defendant and retained by him for his own use, and for the further considerations of the free use of a part of said gas by the said Albert Billy, which said use has continued without interruption until the trial of this cause, and that the said Albert Billy is not entitled to recover any further sum or sums from the said privilege of taking gas, or for the gas so taken."

This conclusion is assailed as being erroneous.

It is erroneous in two respects. In the first place, defendant did not allege or claim in its pleadings that the act and conduct of plaintiff in receiving and accepting the $300 per year constituted a valid license except after and from the date of removal of restrictions on the alienation of the land, viz., October 7, 1919. In the second place, defendant concedes that a license of the nature it claimed is revocable at will. Certainly, then, if defendant had any such license, it was revoked by Billy when he refused to accept payment for more than a period of four months after

May 20, 1922, which would mean to September 20, 1922. Notwithstanding this, defendant continued to take gas from the well until April 16, 1923; 36,597,000 cubic feet during the year 1923 and 133,338,000 cubic feet during the year 1922. How much of this was taken after September 20, 1922, does not appear. In any event plaintiffs would be entitled to pay for the gas taken after the claimed license had been revoked.

Plaintiffs have always contended that there was no lease.

Defendant in its brief says:

"For the purpose of this litigation all parties admit that there was no lease."

Therefore, there is no defense to an accounting for gas taken from the land based upon the lease.

Defendant asserts that, with full knowledge of the legal effect, plaintiff accepted money consideration each year in advance of the taking of the gas, and that having "thus granted a license," he is estopped and barred from recovery.

Defendant, by answer in the original action and in its first answer in this action, pleaded the acts and conduct of Billy in accepting the payments and the knowledge of his wife of said facts, as estoppel from questioning the validity of the lease. That question was therefore adjudicated adversely to the claim of defendant in the original decree canceling the lease. That this is true is pointed out in the opinion in the first appeal in this case, Billy v. Le Flore County Gas & Electric Co., 146 Okla. 227, 293 P. 1009.

All questions as to the validity of the lease, including the question of estoppel from denying its validity, have been settled.

The question, then, is whether the acts and conduct of plaintiffs, aside from the lease, amount to a license by which defendant may take the gas from said land, and pay nothing therefor save and except the consideration agreed to be paid in the lease, which amount, it is conceded, Albert Billy accepted and received. The only allegation of defendant in its amended answer concerning the question of license is that from and after removal of restrictions a license came into being. It did not claim that prior to removal of restrictions Billy had the right to grant or license defendant to take gas from said well.

Prior to removal of the restrictions, Billy had no such right. The only way he was authorized to permit removal of oil or gas from his land was by way of a lease for such purpose, approved by the Secretary of the Interior. To say that an allottee such as Billy could by mere license authorize or permit any person to take oil or gas from restricted land, or create a license for such purpose by acceptance of a valuable consideration therefor, would be to render nugatory all acts of Congress restricting alienation or leasing of allotted land.

There is no claim or showing that the Secretary of the Interior ever approved such an arrangement. There was no authority for such approval. There was no approval by the Secretary of the Interior of any contract, agreement, or license other than the lease which the decree in the first action declared invalid. Defendant could have protected said lease by prosecuting appeal to this court and ultimately to the Supreme Court of the United States, as was done in Sperry Oil & Gas Co. v. Chisholm, 264 U. S. 488, 44 S. Ct. 372, 68 L. Ed. 803.

The case was tried below upon the theory that the claimed license came into being only after removal of restrictions on alienation of the land.

This is indicated by the fact that all the questions propounded to Albert Billy relate to the time after restrictions were removed. The first question on the particular subject was:

"2. Now, Albert, the record here shows that after your restrictions were removed in 1919, that several times you secured money on account of royalties, sometimes several months before they were due."

All this testimony on that subject related to the period after restrictions were removed.

The finding and conclusions of law upon which the judgment is based went beyond the issues and beyond the law insofar as it is held that the acts and conduct of Billy constituted a license to take gas from the land prior to October 7, 1919, the date of removal of restrictions on the land.

There was and could be no valid license prior to that date. There being no license prior to removal of restrictions, and no license from and after the refusal of Billy to accept payment, we next consider the effect of the acts and conduct of plaintiffs after removal of restrictions on alienation of the land, down to the last date to which it is shown Billy accepted payment at the rate of $300 per annum.

The Supreme Court of the United States, in Sperry Oil & Gas Co. v. Chisholm, supra, held that when all restrictions upon allotted Indian land have been removed, such lands become, in all respects, subject to the allottee's contract, under the laws of the state, just as the property of other citizens, and that all questions pertaining to its disposal fall under the scope and operation of those laws.

There the land involved was the homestead. It was held that since the wife did not join in the extension lease, and there being nothing in her acts and conduct which estopped her from asserting its invalidity, under the provisions of the Oklahoma statute, the lease was invalid as to the "surplus" allotment. This court has specifically held that an oil and gas lease covering the homestead of husband and wife is void unless joined in by both husband and wife.

It cannot be said that a license given by the husband, without being joined by the wife, could give a greater or more valid right to take oil or gas from the homestead land than a formal lease.

Every reason would apply to the granting of a license that would apply to a lease.

Section 9661, O. S. 1931, 16 Okla. Stat. Ann. § 4, provides that:

". . . No deed, mortgage or contract relating to the homestead exempt by law, except a lease for a period not exceeding one year, shall be valid unless in writing and subscribed by both husband and wife, where both are living and not divorced, or legally separated except to the extent hereinafter provided."

The other exceptions are where title is in the husband and the wife voluntarily abandons him for a period of one year, or for any cause takes up her residence in another state, section 9663, O. S. 1931, 16 Okla. Stat. Ann. § 6; and in case either husband or wife shall become hopelessly insane, section 9664, O. S. 1931, 16 Okla. Stat. Ann. § 7.

In this case there is no evidence whatever that Dora Billy, the wife, had any knowledge whatever concerning the matters involved, until commencement of the action to cancel the lease, except that she resided on the land and presumably knew that the gas well was drilled and that gas was being taken therefrom. There is no evidence that she knew that Albert Billy received any money whatever after restrictions were removed.

Since the wife did not join in any agreement for a license, and there being no evidence of any acts or conduct on her part which would estop her from asserting the invalidity of any license, express or implied, and the land being the homestead, it must be held that defendant had no valid license to take the gas from and after October 7, 1919.

Other matters pleaded as defense have long since been decided adversely to defendant. The evidence shows, and as we understand the record it is conceded, that the gas taken from the well was 1,444,672,000 cubic feet. The evidence as to its value is two and nine-tenths cents per thousand cubic feet, al-

lowing for all expenses for drilling and equipping the well and of operation.

Judgment reversed and cause remanded, with directions to enter judgment for plaintiffs.

CORN, V. C. J., and OSBORN, BAYLESS, and ARNOLD, JJ., concur. WELCH, C.J., and GIBSON, HURST, and DAVISON, J., dissent.

---

GIBSON, J. (dissenting). The decision on the first appeal, 146 Okla. 227, 293 P. 1009, holding that the plaintiffs had a right to recover, has become the law of the case, and for that reason I think the trial court erred in holding that plaintiffs were not entitled to recover. But I am of the opinion that plaintiffs are only entitled to recover for the gas taken from the premises subsequent to January 15, 1922, together with interest on the value thereof to be computed from the time of the conversion at the rate of 6 per cent.

The following facts stand out undisputed in the record:

There was no contractual relationship existing between the parties. Plaintiffs have established their right to recover on that assumption. From the very start plaintiffs knew that the defendant was removing the gas from the premises and converting the same to its own use. On January 15, 1924, they commenced this action to recover as in conversion of personal property, and for an accounting. This was the first time they had sought a money judgment. The first action, No. 3629, was for cancellation of the lease and sought no financial recovery. But, according to our former decision, supra, the right to establish the amount of recovery at some future date became established by reason of a provision in the trial court's decree reading as follows:

"and the court does not now determine the rentals for said real estate or determine the value of the oil and gas, taken from said lands but leaves that question for future action between the parties. Done in open court this the 16 day of April, 1923"

—but, as stated above, in that action no rentals and no recovery for conversion of the gas were sought, hence the quoted provision in the judgment could not amount to a reservation for future trial or consideration of any part of the cause of action stated in case No. 3629. This action was the first looking toward recovery for conversion.

In the circumstances here the statute of limitations commenced to run each time the gas was removed. Cornelius v. Standard Royalties Co., 131 Okla. 112, 267 P. 838. The rule is there stated as follows:

"The general rule is the statute of limitation begins to run when cause of action accrues, and the true test to determine when the cause of action accrues is to ascertain the time when the plaintiff could first maintain his action to a successful result."

In the instant case, each time gas was taken from the premises by defendant a cause of action accrued to plaintiffs. Their action is not based on contract, express or implied, but is for taking personal property, and such an action is barred after two years by reason of subdivision 3, sec. 101, O. S. 1931, 12 Okla. Stat. Ann. §95.

The action is for an accounting based wholly on conversion. There was no suggestion of contractual or fiduciary relationship between the parties; and there were no mutual accounts. Ordinarily, an action for an accounting is an equitable action for the striking of a balance between the parties and enforcing payment. Hendrickson v. Brannon, 182 Okla. 637, 79 P. 2d 606. Equity would not ordinarily assume jurisdiction of the present action although it is denominated an action for accounting. It is founded wholly on tort. 1 Am. Jur. 303, § 55. But, as said in the text cited, "where equity has acquired jurisdiction of a tort case on independent grounds, an accounting may be granted for the purpose of affording complete relief."

The question now arises whether equity has acquired jurisdiction of this particular case sufficient to warrant an

equitable accounting. The answer to this question becomes important in applying the statute of limitations. If this action is a part of the action to cancel the lease, or may be said to be ancillary thereto, the commencement of the suit to cancel would toll the statute, and plaintiffs could recover for all gas taken within two years prior thereto. If the present action is a wholly independent one, it sounds wholly in tort and recovery would be limited to two years prior to the commencement thereof.

Plaintiffs say the cause of action did not accrue until the decree canceling the lease became final. Probst v. Bearman, 76 Okla. 71, 183 P. 886; Texas Co. v. Petitt, 107 Okla. 243, 220 P. 956. In the Probst Case the following rule was announced:

"Where oil and gas is purchased pending a suit to cancel the lease under which same is produced, by parties having knowledge of such litigation and of the purpose of the adverse party to insist upon his rights, the statute of limitations does not begin to run against the right to compel such purchasers to account for the oil and gas until the final determination of the suit canceling the lease."

But in that case plaintiff sought to cancel the lease, not because it was void in its inception, but because of violation of covenants thereof; and an accounting was decreed in the same case. The above rule was applied to third parties who had joined in the conversion pending the action and with knowledge of the surrounding circumstances. These parties contended that, since more than two years had elapsed between the time they purchased the oil from the defendant and the time they were made parties to the suit, the action as to them was barred by the statute.

But that action was one in equity from the very start, for cancellation of a lease for violation of the terms thereof, not for inherent invalidity. And an accounting was had in the same action. This statement is based upon the pleadings of the intervener, who was successful in the action. The facts and circumstances there were entirely different from those in the instant case, and we should not apply the rule here to extend the time for the commencement of the suit.

The decree canceling the lease saved to the plaintiffs the right to establish the amount due. That was an equity case, and had the accounting been sought and had therein, the date on which the action was commenced would have been controlling as to the question of the statute of limitations; action would have tolled the statute. But the court lost jurisdiction of the equity case when the present action was filed. This case now amounts to no more than an action to recover for the conversion of the gas, with the allegations of conversion already established by the provision in the former decree as aforesaid. As I have said above, an accounting based on a tort cannot be had unless the court acquires jurisdiction thereof on some independent equitable ground. It necessarily follows that if the court loses jurisdiction of the equitable cause, there can be no equitable accounting for the tort. Such was the case here.

In view of the uncontroverted facts in this case, the plaintiffs were entitled to recover for all gas taken during the entire period of two years next preceding the commencement of this action on January 15, 1924, and no more.

For those reasons, I respectfully dissent.

Mr. Justice HURST concurs in these views.