MONTANA EASTERN LIMITED v.
UNITED STATES et al.
No. 8595.

Circuit Court of Appeals, Ninth Circuit.
April 4, 1938.

898

Horace W. Judson, of Cut Bank, Mont., and Louis P. Donovan, of Shelby, Mont., for appellant.

John B. Tansil, U. S. Atty., and Donald J. Stocking, Asst. U. S. Atty., both of Butte, Mont., for appellees.

Before GARRECHT, HANEY, and STEPHENS, Circuit Judges.

HANEY, Circuit Judge.

Appellant seeks to set aside a judgment rendered against it, and another, in the sum of $3,423.80, together with interest and costs.

Montana Eastern Limited, a Montana corporation, on November 3, 1930, entered into ten written contracts (hereinafter referred to as leases), pursuant to the Act of March 3, 1909, 25 U.S.C.A. § 396, with divers allottees, who were wards of the government of the United States and members of the Blackfeet Tribe.

By the terms of the leases there were devised to the appellant certain tracts of land in Pondera county, Mont.; the aggregate thereof being about 2,977.22 acres.

The provisions of the leases, which were executed on forms provided by the Department of the Interior, required appellant, commencing with the date of approval of the leases, "to pay as advance royalty the sum of fifteen cents per acre per annum in advance for the first and second years, thirty cents per acre per annum in advance for the third and fourth years and seventy-five cents per acre per annum in advance for the fifth year and one dollar per acre per annum in advance for each succeeding year during the term * * *" of the lease. In addition to the aforesaid advance royalty, said appellant agreed to pay, beginning one year from the date of approval of said leases, the sum of $1 per acre per annum as rental of the land covered by the leases, unless, within one year of such approval, appellant should commence the drilling of a test well on said lands. The payments were to be made to the Superintendent of the Blackfeet Indian Agency at Browning, Mont., for the use and benefit of the Indian wards. The leases also provided that appellant might surrender the leases by paying to the proper officer "all amounts then due hereunder, and the further sum of one dollar." By another provision, the Secretary of the Interior had the power to declare the leases null and void upon "violation of any of the substantial terms and conditions" thereof, but in such event it was provided that appellant should not "be relieved from the obligation to pay said advance royalty annually when it becomes due by reason of any subsequent surrender or cancellation of this lease."

The term of the leases was ten years from and after the approval thereof by the Secretary of the Interior, which approval was made on May 5, 1931.

Appellant and appellee National Surety Company, a New York corporation (hereinafter referred to as the surety), executed a bond to the United States in the penal sum of $15,000 to secure the faithful performance of the leases.

On May 2, 1933, the United States brought this action against appellant and the surety. The complaint alleges that "said

leases were duly cancelled by the United States after due notice to the [appellant and the surety] on July 20, 1932 for [their] failure * * * to pay the advance royalties and rentals due on May 5, 1932." The complaint also alleges that "there is now due and owing under the terms of said lease to said Indian allottees advance royalty and the rentals in the sum of $3,423.80 due May 5, 1932; that no part of said sum has been paid; that [the United States] has demanded payment of said sum * * * but that [appellant and the surety], and each of them, have refused and still refuse to pay the same. That by reason thereof, said [appellant and the surety] have jointly and severally become and are liable to pay the [United States] advance royalty and annual rentals in the sum of $3,423.80, together with lawful interest thereon from and after May 5, 1932."

Further allegations are that appellant went into possession of the lands upon the execution of the contracts and remained in possession until July 20, 1932, but that it did not commence drilling a test well within one year of the date of the approval of such leases.

Appellant, separately and with the surety, demurred to the complaint upon the ground that the complaint did not state facts sufficient to constitute a cause of action against appellants, which was overruled.

Thereafter appellant, by answer, admitted, inter alia, the execution of the leases, that it went into possession upon such execution, and failure to commence drilling of a test well; it denied that it remained in possession after May 1, 1932; it alleged abandonment "on or about May 1, 1932," and the giving of notice thereof to "the officers in charge of the Blackfeet Indian Agency"; and it denied that appellant "is liable to pay the [United States] advance royalty and annual rental in the sum of $3423.80, together with lawful interest thereon from and after May 5, 1932, or any [sum] whatever, save and except the sum of $722.28."

The United States filed a reply in which it denied abandonment or surrender of premises by appellant.

Trial to a jury resulted in a verdict against appellant and the surety in the sum of $3,423.80, "with interest at the legal rate from and after May 5, 1932." From a judgment thereon appellant, alone, prosecutes this appeal.

Only the advance royalty and rentals alleged to have become due by the terms of the leases, on May 5, 1932, are involved.

The Act of March 3, 1909, 25 U.S.C.A. § 396, provides: "All lands allotted to Indians in severalty * * * may by said allottee be leased for mining purposes for any term of years as may be deemed advisable by the Secretary of the Interior; and the Secretary of the Interior is authorized to perform any and all acts and make such rules and regulations as may be necessary for the purpose of carrying the provisions of this paragraph into full force and effect."

In the regulations made pursuant to that statute, it was provided that: "No part of any advance royalties or annual rentals shall be refunded to the lessee, nor shall he be relieved from his obligation to pay royalties and rentals annually when due by reason of any subsequent surrender or cancellation of the lease."

■ Appellant contends that since the United States was not a party to the leases, and had no interest in the rents and royalties, it was not entitled to bring the action, because it was not the real party in interest. We think that the United States properly brought the action. Cramer v. United States, 261 U.S. 219, 232, 43 S.Ct. 342, 345, 67 L.Ed. 622; United States v. Sherburne Mercantile Co., 9 Cir., 68 F.2d 155, 157.

■ Appellant contends that when the United States canceled the leases, such cancellation extinguished all rights and liabilities thereunder. The contention is based on the reasoning that. upon breach of the leases there existed two inconsistent remedies, i. e., rescission, thereby denouncing any rights under the leases, or the alternative remedy of affirming the leases and suing to recover damages for the breach; and that the United States made an election of remedies when it canceled the leases.

It is clear, we think, that by the regulations above quoted, where the advance royalty and rental became due prior to the date of cancellation, appellant is not relieved of its obligation to pay those sums. In Maryland Casualty Co. v. United States, 251 U.S. 342, 349, 40 S.Ct. 155, 157, 64 L.Ed. 297, it was said that: "A regulation by a department of government, addressed to and reasonably adapted to the enforcement of an act of Congress, the administration of which is confided to such department, has the force and effect of law if it be not in conflict with express statutory provision."

900

Appellant makes no argument at all with respect to the regulation. We will not presume it to be void, and, since it covers the precise situation here, it is controlling.

Two specifications are addressed separately to the right to recover advance royalties and rentals, and are disposed of by the foregoing.

■■ Finally, it is urged that the advance royalty and rentals must be apportioned for the period from May 5, 1932, to the date of forfeiture, because it is so stipulated in Rev. Codes of Montana 1935, § 7740. That statute provides: "When the hiring of a thing is terminated before the time originally agreed upon, the hirer must pay the due proportion of the hire for such use as he has actually made of the thing, unless such use is merely nominal, and of no benefit to him."

It would seem that the statute does not in terms prevent recovery of the sums here in question. However, assuming, without deciding, that the statute would prevent more than a proportionate recovery based on actual use by appellant, it would be contrary to the regulation quoted, and therefore the Montana "law is hence invalid because of its repugnancy to the paramount Act of Congress." Sperry Oil & Gas Co. v. Chisholm, 264 U.S. 488, 44 S.Ct. 372, 374, 68 L.Ed. 803, and see the cases therein cited.

Affirmed.