# UNITED STATES ex rel. KNAUFF v. WATKINS.

No. 187, Docket 21254.

United States Court of Appeals Second Circuit.

March 11, 1949.

Writ of Certiorari Granted May 2, 1949.

See 69 S.Ct. 941.

John F. X. McGohey, U. S. Atty., and
William J. Sexton, Asst. U. S. Atty., both
of New York City, for the United States.

Louis Steinberg, District Adjudications
Officer, Immigration and Naturalization

Service, U. S. Dept. of Justice, of New York City (Alvin Lieberman, Atty., Immigration & Naturalization Service, U. S. Dept. of Justice, of New York City, of counsel), for W. Frank Watkins.

Gunther Jacobson and John Windsor, both of New York City, for relator.

Before AUGUSTUS N. HAND, CHASE and FRANK, Circuit Judges.

CHASE, Circuit Judge.

The question which must be answered on this appeal is whether the wife of an American soldier who is a war bride within the purview of Public Law 271 of 1945, 59 Stat. 659, 8 U.S.C.A. § 232, may be denied admission to the United States without a hearing before a Board of Special Inquiry.

The relator-appellant is the lawful wife of Kurt W. Knauff who is a naturalized American citizen now employed in a civilian capacity by the American Army of Occupation in Germany. Mr. Knauff served as a soldier in the armed forces of the United States from November 21, 1942 until he was honorably discharged on January 17, 1946. He married the appellant in Germany on February 28, 1948 after having obtained consent so to do from the Office of the Advocate General of the United States Army at Frankfort-on-the-Main. The appellant, born on January 1, 1915, is a native of Germany who is now stateless and who served in England in the Royal Air Force as a flight sergeant from January 1, 1943 to May 30, 1946 and later was employed in Germany in the Civil Censorship Division and the Signal Division of the United States Army. Her official record in so far as appears is excellent.

She obtained temporary leave from her employment in Germany in June 1948 to enter the United States to apply for naturalization as an American citizen under the provisions of Sec. 312 of the Nationality Act of 1940, 8 U.S.C.A. § 712, and arrived at the Port of New York on an American Army transport on August 14, 1948. After examination she was temporarily excluded by an immigration inspector. Thereafter she was denied further hearing and the exclusion order was made permanent by action of the Attorney General pursuant to the provisions of Sec. 175.57(a) of Title 8 of the Code of Federal Regulations. She has since been detained at Ellis Island for return to Germany. The writ was issued on the application of her husband who came here for that purpose and who has since returned to Germany. It was dismissed after hearing and upon a rehearing the order of dismissal was left unchanged.

Sec. 223 of Title 22 U.S.C.A., 40 Stat. 559, as amended, 55 Stat. 252, provides that: "When the United States is at war or during the existence of the national emergency proclaimed by the President on May 27, 1941 [No. 2487, 50 U.S.C.A.Appendix, note preceding § 1], or as to aliens whenever there exists a state of war between, or among, two or more states, and the President shall find that the interests of the United States require that restrictions and prohibitions in addition to those provided otherwise than by sections 223-226(b) of this title be imposed upon the departure of persons from and their entry into the United States, and shall make public proclamation thereof, it shall, until otherwise ordered by the President or Congress, be unlawful—

"(a) For any alien to depart from or enter or attempt to depart from or enter the United States except under such reasonable rules, regulations, and orders, and subject to such limitations and exceptions as the President shall prescribe; * * *."

On November 14, 1941 the President did, by Proclamation No. 2523, impose restrictions and prohibitions in addition to those otherwise provided by law upon the departure of persons from and their entry into the United States which were to remain in force and effect until he otherwise ordered. This proclamation, insofar as now pertinent, provided that, "No alien shall be permitted to enter the United States if it appears to the satisfaction of the Secretary of State that such entry would be prejudicial to the interests of the United States as provided in the rules and regulations hereinbefore authorized to be prescribed by the Secretary of State, with the concurrence of the Attorney General."

Pursuant to the authority thus given them the officials just named did prescribe

the rules and regulations which apply to the entry of the appellant and which are to be found in Title 8 of the Code of Federal Regulations Secs. 173.53 and 175.57. In Sec. 175.53 aliens who are excludable are classified in some detail and in Sec. 175.57 it is provided that, "(a) Any alien, even though in possession of a permit to enter, or exempted under §§ 175.41 to 175.63, inclusive, from obtaining a permit to enter, may be excluded temporarily if at the time he applies for admission at a port of entry it appears that he is or may be excludable under one of the categories set forth in § 173.53. The official excluding the alien shall immediately report the facts to the head of his department, who will communicate such report to the Secretary of State. Any alien so temporarily excluded by an official of the Department of Justice shall not be admitted and shall be excluded and deported unless the Attorney General, after consultation with the Secretary of State, is satisfied that the admission of the alien would not be prejudicial to the interests of the United States. Any alien so temporarily excluded by any other official shall not be admitted and shall be excluded and deported unless the Secretary of State is satisfied that the admission of the alien would not be prejudicial to the interests of the United States.

(b) In the case of an alien temporarily excluded by an official of the Department of Justice on the ground that he is, or may be excludable under one or more of the categories set forth in § 175.53, no hearing by a board of special inquiry shall be held until after the case is reported to the Attorney General and such a hearing is directed by the Attorney General or his representative. In any special case the alien may be denied a hearing before a board of special inquiry and an appeal from the decision of that board if the Attorney General determines that he is excludable under one of the categories set forth in § 173.53 on the basis of information of a confidential nature, the disclosure of which would be prejudicial to the public interest."

It was as a result of following the procedure thus provided and the exercise of the authority thus given to the Attorney General that the appellant was excluded and ordered deported to Germany.

■ Passing for the moment any rights she or her husband may have under the so-called War Brides Act, supra, we hold that the action taken in respect to her was lawful. Sec. 223 of Title 22 U.S.C.A. together with the President's Proclamation pursuant thereto and the rules and regulations promulgated thereunder set up a basis, and the applicable procedure, for the exclusion of aliens in addition to that found in Secs. 136 and 137 of Title 8 U.S.C.A. and the procedure prescribed in Sec. 152 of that Title. It is not claimed, and the claim would clearly be untenable if made, that either Sec. 136 or 137 applies and neither does Sec. 152, either by statute or by the President's Proclamation, where, as here, the exclusion is "on the basis of information of a confidential nature, the disclosure of which would be prejudicial to the public interest."

Thus it was provided that, as was done in this instance, an alien who sought entry to the United States could be temporarily excluded by any official of the Department of Justice and could not be admitted but must be excluded permanently and deported unless after the temporary action had been reported to the Secretary of State the Attorney General was satisfied that the admission of the alien would not be prejudicial to the interests of the United States. And the Attorney General could reach the conclusion that he was satisfied that the alien should be admitted only after he had consulted the Secretary of State. There is no requirement, however, that the Attorney General need consult the Secretary of State in the event that he is not satisfied that the alien may be admitted without prejudice to the public interest. In this instance it does not appear whether the Attorney General did consult the Secretary of State and though the appellant raises that point it is of no consequence for the reasons just stated.

■■ The appellant's other contentions to the effect that the basis of her exclusion and the procedure followed were unlawful are that Sec. 223 of Title 22 U.S.

C.A. is too vague in its attempted delegation of legislative power; that the regulations do not conform to the President's Proclamation and that the regulations are themselves too vague. We find no merit in any of these objections.

■■ The power of Congress to deny admission to aliens is absolute. Fok Young Yo v. United States, 185 U.S. 296, 22 S.Ct. 686, 46 L.Ed. 917; Kaoru Yamataya v Fisher, 189 U.S. 86, 23 S.Ct. 611, 47 L.Ed. 721. Consequently there need be no such limitations upon the terms of delegation of that power as were held to be a constitutional prerequisite to the delegation of legislative power in Schechter Poultry Corp. v. United States, 295 U.S. 495, 55 S. Ct. 837, 79 L.Ed. 1570, 97 A.L.R. 947. Furthermore, these regulations were within the wide sweep of delegation to executive discretion under the war power, as to which see Hirabayashi v. United States, 320 U.S. 81, 63 S.Ct. 1375, 87 L.Ed. 1774, and we are still at war with Germany. Ludecke v. Watkins, 335 U.S. 160, 68 S.Ct. 1429.

■ The system which Congress set up and which has been followed in this instance comprises the promulgation for the guidance of subordinate officials of a series of classifications of excludable aliens to supplement the then existing laws. If subordinate officials are in doubt as to the admissibility of any alien under the supplemental regulations, such officials have the power to exclude temporarily and the duty to report that action for the attention of officials of cabinet rank who may make the exclusion permanent without a formal hearing, or any hearing before a board of special inquiry, provided the higher official charged with duty to decide does decide on the basis of confidential information that the alien is not admissible under the applicable law and regulations. The obvious purpose was to enable this country to be protected from the entry of aliens who were within the excludable categories without having to make public the proof of that status when in the judgment of responsible officials the disclosure of such information or the source of it would be detrimental to the public safety. Non-resident aliens have no interest which may not lawfully be dealt with in that way. United States ex rel. Medeiros v. Watkins, 2 Cir., 166 F.2d 897; United States ex rel. Schlueter v. Watkins, 2 Cir., 158 F.2d 853.

■ That being so, the appellant has no grievance which can be remedied because some of the classifications in Sec. 175.53 may be so broadly stated as to be, as she says, vague. Some are very definite and explicit, but since discretionary action of the Attorney General was based on confidential information neither the appellant, nor we, can know the excludable class into which that put her. A reading of Secs. 175.53 and 175.57 in the light of the authorizing statute and Presidential Proclamation leaves no doubt, however, that, insofar as they are explicit, they fall within the scope of the delegated power to promulgate rules and regulations which are reasonably drawn to accomplish the evident purpose of Congress. Regulations having been duly adopted, the burden is on one who questions them to show their invalidity. Montana Eastern Limited v. United States, 9 Cir., 95 F.2d 897. And this burden can be carried only by showing as a minimum that the regulations are inconsistent with the underlying statute or are unreasonable or inappropriate. United States v. Morehead, 243 U.S. 607, 37 S.Ct. 458, 61 L.Ed. 926; Boske v. Comingore, 177 U.S. 459, 20 S.Ct. 701, 44 L.Ed. 846. It has not been discharged by this appellant.

■ Nor do the reasons for exclusion stated by the Attorney General indicate affirmatively an arbitrary action on his part or an unreasonable basis for determining that appellant's entry would be prejudicial to the interests of the United States. The appellant, having failed to show affirmatively unfairness either in the regulations or in the action of the Attorney General, cannot complain merely of a lack of procedural due process. United States ex rel. Schlueter v. Watkins, supra.

Yet that is not enough to justify the order below dismissing the writ. The appellant insists that, even though the regulations are valid, her entry is not barred by them because she is entitled to enter as a matter of right under the so-called War

604

Brides Statute, supra. That she is a person within the scope of that statute has been established and whether she is right or wrong in her demand for entry depends upon the proper construction of Sec. 1 of that act, 59 Stat. 659, 8 U.S.C.A. § 232. It reads so far as now pertinent as follows: "* * * notwithstanding the documentary requirements of any of the immigration laws or regulations, Executive orders, or Presidential proclamations issued thereunder, alien spouses * * * of United States citizens serving in, or having an honorable discharge certificate from the armed forces of the United States during the Second World War shall, if otherwise admissible under the immigration laws and if application for admission is made within three years of December 28, 1945, be admitted to the United States: * * *."

Sec. 5, 8 U.S.C.A. § 236, of the act provides that, "For the purpose of this Act, the Second World War shall be deemed to have commenced on December 7, 1941, and to have ceased upon the termination of hostilities as declared by the President or by a joint resolution of Congress." On December 31, 1946, the President by Proclamation No. 2714, 50 U.S.C.A.Appendix, § 601 note, while recognizing that a state of war still existed, did proclaim the cessation of hostilities of World War II effective on 12 o'clock noon on that day.

From this the argument of the appellant is in substance (1) that 22 U.S.C.A. § 223 is not an immigration law and consequently neither it nor the regulations above discussed limit the scope of the War Brides Act; and (2) that as World War II ceased for the purposes of the War Brides Act on December 31, 1946 the powers delegated by 22 U.S.C.A. § 223 were, in so far as the War Brides Statute is concerned, terminated on that date.

■ We cannot agree with either contention. Though Sec. 223 of Title 22 may properly enough be said not to be one of the statutes embraced within the concept of immigration laws in times of ordinary tranquility and is, as we have seen, a statute to supplement them as a war measure it nevertheless does deal with matters affecting immigration into this country and emigration therefrom and is, while it is effective, one of the immigration laws subject to which a war bride is made admissible under Sec. 232 of Title 8 U.S.C.A. See Bonham v. Bouiss, 9 Cir., 161 F.2d 678.

It was in effect when this appellant presented herself at the Port of New York for admission and still is. By its terms it was made effective not only when the United States is at war but also during the existence of the national emergency proclaimed by the president on May 27, 1941, No. 2487, 50 U.S.C.A.Appendix, note preceding § 1, and as to aliens when a third named condition was met. We need not rely upon more than the continued existence of the national emergency above mentioned. That alone makes the regulations under which the appellant was excluded still effective as to her though we do not mean to imply that World War II does not still exist for that purpose also. We merely find no occasion for decision as to that.

■ Finally the appellant argues that she is in this country while being detained at Ellis Island and is entitled to apply for naturalization under the provisions of Section 312 of the Nationality Act of 1940, 8 U.S.C.A. § 712. Without intimating that we agree that her presence on Ellis Island while being held there under an order of exclusion is enough to put her "in the United States" within the meaning of the above statute, we find it a sufficient answer to this contention to point out that whatever rights she may have under the naturalization laws do not exempt her from the scope of laws pertaining to the admission of aliens.

Affirmed.