## UNITED STATES v. OBERMEIER.

No. 76, Docket 21760.

United States Court of Appeals
Second Circuit.

Argued Oct. 30, 1950.

Decided Dec. 20, 1950.

Writ of Certiorari Denied March 26, 1951.
See 71 S.Ct. 569.

Paul O'Dwyer and Sidney E. Cohn, New York City, for appellant.

Frank J. Parker, U. S. Atty. for the Eastern District of New York, Brooklyn, N. Y. (George W. Percy, Jr., Southampton, N. Y., and Edward S. Szukelewicz, Brooklyn, N. Y., of counsel), for appellee.

Before L. HAND, Chief Judge, and SWAN and FRANK, Circuit Judges.

FRANK, Circuit Judge.

I. *The Third Count*

This Count (unlike the other two, which we shall consider later) raises no

question of the statute of limitations, as the alleged offense occurred on June 6, 1946, and the indictment was found on September 28, 1948, within the three-year period ordained by 18 U.S.C.A. § 3282. Defendant argues that the evidence was insufficient to prove that he then made a false oath or that, if he did, he was under oath. But we think the evidence enough to sustain the trial judge's contrary findings.

Defendant further contends, however, that in any case, he committed no crime, because the oath was administered to him during a proceeding in which there was no statutory authority to administer an oath. If so, Obermeier did not commit perjury by then swearing falsely. For the Supreme Court has held that false statements under oath "before one who has no legal authority to administer oaths of a public nature, or before one who * * * [is] authorized to administer some kind of oaths, but not the one which is brought in question, cannot amount to perjury at common law, or subject the party taking it to prosecution for the statutory offense of willfully false swearing * * * the oath must be permitted or required, by at least the laws of the United States, and be administered by some tribunal, officer, or person authorized by such laws to administer oaths in respect of the particular matters to which it relates."[1] The same requirement is somewhat differently stated in United States v. Morehead, 243 U.S. 607, at 614, 37 S.Ct. 458, at 460, 61 L.Ed. 926, where the Supreme Court, in upholding a regulation, said: " * * * the assertion of its invalidity must be predicated either upon its being inconsistent with the statutes or upon its being in itself unreasonable or inappropriate * * * defendant urges that the regulation is inconsistent with the statute, in that it adds to the requirements of the statute still another condition to be performed * * * and hence is legislation, not regulation. But the regulation does not add a new requirement * * * as in Williamson v. United States, 207 U.S. 425, 458-462, 28 S.Ct. 163, 52 L.Ed. 278, 294-297."[2]

Here, the government, in its brief, distinguishes between (1) a "preliminary examination" held "before filing the petition for naturalization" and (2) a "preliminary hearing" held after the petition has been filed. Had the examination on June 6, 1946 been made in connection with a petition then pending, an oath would have been explicitly authorized by the Nationality Act,[3] and the regulations made thereunder.[4] But the government concedes (and Dillon, the examiner, so testified) that, on June 6, 1946, when Obermeier made this statement, no petition for his naturalization was pending—since his petition, previously filed, had then been dismissed—and that the hearing was a pre-petition hearing under 8 C.F.R. 370.8.[5]

1. United States v. Curtis, 107 U.S. 671, 672-673, 2 S.Ct. 507, 508, 27 L.Ed. 534; cf. United States v. George, 228 U.S. 14, 21, 33 S.Ct. 412, 57 L.Ed. 712; Williamson v. United States, 207 U.S. 425, 458-460, 28 S.Ct. 163, 52 L.Ed. 278; Dwyer v. United States, 9 Cir., 170 F. 160, 166.

2. Cf. United States ex rel. Knauff v. Watkins, 2 Cir., 173 F.2d 599, 603.

3. 8 U.S.C.A. § 733.

4. 8 C.F.R. 373.1.

5. This regulation reads in part as follows. "Wherever practicable, preliminary examinations of applicants for naturalization and their witnesses shall be made in person and under oath. The applicant and each witness shall be interviewed separately and apart from one another. The purpose of such examination shall be to obtain accurate and material information bearing upon the applicant's admissibility to citizenship and the qualifications of the witnesses. Both the applicant and the witnesses shall be carefully interrogated to determine whether the applicant has complied with the jurisdictional requirements of law; is mentally and morally qualified for citizenship; is attached to the principles of the Constitution of the United States, and is well disposed to the good order and happiness of the United States. * * * The examination shall be limited to inquiry concerning the applicant's residence, good moral character, understanding of and attachment to the fundamental principles of the Constitution of the United States, and his other qualifications to become a naturalized citi-

The question presented by this Count, then, is whether the examiner had legal authority to administer an oath to Obermeier in such a preliminary examination.

We start with these doctrines: (1) A regulation is presumptively valid, and one who attacks it has the burden of showing its invalidity.[6] (2) A regulation or administrative practice is ordinarily valid unless it is (a) unreasonable or inappropriate or (b) plainly inconsistent with the statute.[7]

The Nationality Act of 1906, Section 1,[8] provided that the Bureau of Immigration and Naturalization should "have charge of all matters concerning the naturalization of aliens", and Section 28 provided: "The Secretary of Commerce and Labor[9] shall have power to make such rules and regulations as may be necessary for properly carrying into execution the various provisions of this Act." These provisions were somewhat ambiguous, as the other sections of the Act vested the courts with virtually all powers relating to naturalization from the time when the alien first sought naturalization by making his declaration of intention to become a citizen under oath before the court clerk.[9a] However, after 1906, it became the practice for officials of the Bureau to conduct examinations of applicants for citizenship generally before and sometimes after the petition for naturalization had been filed.[10] · Regulations, beginning in 1924, provided explicitly for pre-petition examinations.[11] And since 1929, the regulations have authorized an

zen, and shall be uniform throughout the United States."

6. Boske v. Comingore, 177 U.S. 459, 20 S.Ct. 701, 44 L.Ed. 846; United States v. Watkins, 2 Cir., 173 F.2d 599, 603; Carter v. Forrestal, 85 U.S.App.D.C. 53, 175 F.2d 364; see, e.g., Jacob Siegel v. F. T. C., 327 U.S. 608, 612–613, 66 S.Ct. 758, 90 L.Ed. 888.

7. United States v. Morehead, 243 U.S. 607, 614, 37 S.Ct. 458, 61 L.Ed. 926; United States v. Smull, 236 U.S. 405, 410, 35 S.Ct. 349, 59 L.Ed. 641; United States v. Bailey, 9 Pet. 238, 255–256, 9 L.Ed. 113.

8. 34 Stat. 596.

9. The Bureau of Naturalization was originally placed under the Secretary of Labor and Commerce by Section 1 of this Act.

9a. 34 Stat. 596, § 4(1).

10. The Annual Report of the Commissioner of Naturalization for Fiscal Year 1925, page 1 reads: "The applicant is * * * notified to appear with two witnesses and submit to the administrative examination preliminary to the filing of his petition. In some instances, the petion is filed before this examination is made."

11. Naturalization Citizenship and Expatriation Laws, June 15, 1924, Rules and Regulations, Rule 3, Subdivision B, Par. 2 (pp. 38–39): "Preliminary forms 2213 and 2214 are designed to elicit the necessary information for the proper execution of a declaration of intention or petition for naturalization. Form 2213 applies solely to declarations of intention and form 2214 to petitions for naturalization. * * * Form 2214, when completed by the alien, shall be forwarded to the proper naturalization examiner, who shall thereupon assist such alien in the preparation of his petition for naturalization on the official form prescribed for that purpose, and such examiner shall examine the alien as to his qualifications for citizenship, interview witnesses, prepare affidavits, and otherwise assist such alien to fully meet the requirements of the naturalization law."

Annual Report of the Commissioner of Naturalization for Fiscal Year 1925, Comment on "Execution of petition before members of the Naturalization Service (p. 17): "For over a year probably 20% of all naturalization papers filed have been completed in all respects, except the administration of the oaths to the applicant and his witnesses, in the presence of a naturalization examiner. * * * When the naturalization law was enacted there was no precedent available to Congress upon which the administrative authority could be predicated. The Act of 1906 does not specifically authorize the full control of the administrative features of the law which experience now shows it to be wise to exercise. Within 90 days after the Act became operative, a plan was imposed upon the clerks of courts of making out all the naturalization papers * * *" but by 1925, according to the Commissioner, naturalization personnel were helping aliens to fill out those forms.

oath in pre-petition examinations.[12] This practice, and regulations so providing, have been in effect from 1929 to date.[13]

They were eminently reasonable and appropriate. For the courts, dealing with naturalization, could not have functioned without this administrative assistance.[14] The pre-petition examination helped to weed out applicants who were ineligible; the facts brought out in such examinations expedited the administrative assistance given the courts after the filing of petitions;[15] and obviously the facts elicited in pre-petition examinations were generally more reliable if under oath.[16]

But in 1926, Congress, despite a recommendation from the Commissioner for legislation expressly authorizing an oath in an administrative, pre-petition examination,[17] amended the Act of 1906 to provide

12. Naturalization, Citizenship and Expatriation Laws, July 1, 1929: Rules and Regulations, Rule 1, Subdivision G, Pars. 1–3: "Rule 1—Administrative Officers and their duties. Subdiv. G. Investigation of naturalization and citizenship matters. P. 64, Par. 1: It shall be the duty of the appropriate naturalization officers or examiners to investigate thoroughly the qualifications and eligibility of applicants for citizenship and their witnesses * * * to make the necessary reports of all the pertinent facts to the courts. * * * " P. 65, Par. 2: "Wherever practicable, preliminary examinations of applicants for citizenship and their witnesses will be made in person. The principal purpose of such examination is to obtain information bearing on the applicant's admissibility to citizenship and the qualifications of the witnesses, rather than to obtain responses for record purposes * * * Search will be made of the appropriate court and other records in establishing the qualifications of the applicant and the witnesses." P. 65, Par. 3: "All material statements of [applicants] for citizenship * * * and their witnesses should be in writing and under oath and signed by applicant or witnesses. * * * " Cf. id., Subdiv. O—Preliminary hearings under the Article of June 8, 1926. Par. 2: " * * * Each petitioner shall first be duly sworn by the designated examiner or officer * * * The designated examiner shall have before him at the preliminary hearing, the record of the administrative examination in such case. * * * "

13. See, e.g., United States v. Morehead, 243 U.S. 607, 613, 37 S.Ct. 458, 61 L. Ed. 926; United States v. McDaniel, 7 Pet. 1, 14–15, 8 L.Ed. 587; United States v. Bailey, 9 Pet. 238, 255–256, 9 L.Ed. 113.

14. See House Report No. 1328, 69th Cong., 1st Sess.

15. 8 C.F.R. 373.1 prescribing the procedure to be followed in preliminary hearings after the petition has been filed, provides in part: " * * * The designated examiner shall have before him at the preliminary hearing the record of the preliminary examination in each case. * * * " This provision has been in the Rules since 1929, see 1929 Rules, Rule 1, Subdiv. O cited in footnote 12, supra.

16. Cf. United States v. Birdsall, 233 U. S. 223, 235, 34 S.Ct. 512, 58 L.Ed. 930; United States v. Smull, 236 U.S. 405, 411, 35 S.Ct. 349, 59 L.Ed. 641; United States v. Morehead, 243 U.S. 607, 614, 37 S.Ct. 458, 61 L.Ed. 926.

17. In his Annual Report for the Fiscal Year 1925 at pages 25–26, the Commissioner made the following legislative recommendation: "Statutory provision should be made for all petitions for naturalization, including the affidavits of the petitioner and his witnesses to be executed before the naturalization examiners, and in the naturalization field office or the office of the clerk of the court, and, when so completed, to be filed with the clerk of the court.

"The courts should be authorized to accept the results of the administrative examination by the naturalization examiners and the appearance in the court of the witnesses dispensed with except where desirable to have them appear.

"Provision should be made that each applicant should appear in person with his witnesses before the naturalization examiner prior to the filing of his petition for naturalization."

The Commissioner buttressed this recommendation with the comment: "By the addition of the authority for the examiners to swear an applicant and his two witnesses to the petition for naturalization, after the transcript of the petition has been made, the work would be placed upon the same basis as any other petition for judicial consideration and could then be filed with the clerk of the court. * * * The time of the examiner in the conduct of the administrative examination will be enhanced tremendously through his execution of the petition. * * * " Id., page 18.

for "preliminary hearings upon petitions for naturalization"—i. e., after the petitions have been filed.[18] This was done after Congress had expressly provided, in 1918, for pre-petition hearings to expedite the naturalization of a special class of aliens— those who were members or prospective members of the United States armed forces in World War I [19] (a provision which was substantially re-enacted for aliens similarly situated in World War II.[20]) And in the Nationality Act of 1940,[21] re-codifying the naturalization laws, 8 U.S.C.A. § 733 which provides for post-petition hearings in the usual cases was retained with minor changes not here relevant.[22]

As against the implications which might be drawn from that history, it is suggested that effect be given to the provision originally enacted in 1918,[23] of 8 U.S.C.A. § 727(e) that "Members of the Service may be designated by the Commissioner * * to administer oaths * * * in matters relating to the administration of the naturalization * * * laws." We think that that provision lacks significance because it merely states what kind of persons may be authorized to administer oaths in naturalization matters.

There remains the fact, however, that, under 8 U.S.C.A. § 727(b), the Commissioner is empowered to "make such rules and regulations as may be necessary to carry into effect the provisions of this subchapter [24] and is authorized to prescribe the scope and nature of the examination of petitioners for naturalization as to their admissibility to citizenship for the purpose of making appropriate recommendations to the naturalization courts. * * *" Defendant contends that this grant of authority refers only to the post-petition hearings expressly authorized by § 733, since both sections refer to "petitioners"—i. e., those who have already filed their petitions —who are to be examined "for the purpose of making appropriate recommendations to the naturalization courts." But we do not think that Congress intended to use these terms so narrowly as to make the "preliminary hearing" authorized by 8 U.S.C.A. § 733 exclusive of any other administrative investigation. A sentence of § 727(b), which was added in 1940,[24a] strongly suggests that the words "petitioner" and "applicant" were used interchangeably by Congress to mean a person seeking naturalization. That sentence reads in part: "Such examination shall be limited to * * * the *applicant's* [24b] * * * qualifications to become a naturalized citizen * * *." Moreover, as we have noted above,[25] under regulations in force since 1929, the examiner at a post-petition "hearing" provided for by § 733 is to have before him the record of the pre-petition administrative examination. Further, the regulations since 1929 have authorized pre-petition examinations under oath.[26] The practice of holding pre-petition examinations was continually reported to Congress by the Commissioner,[27] while that body was

18. 44 Stat. 709. 8 U.S.C.A. § 733, as amended.

19. 40 Stat. 542. 8 U.S.C.A. § 724, as amended.

20. 62 Stat. 282. 8 U.S.C.A. § 724a as amended.

21. 54 Stat. 1137.

22. See Senate Report No. 2150, 76th Cong. 3d Sess.

23. 40 Stat. 542, 544; cf. 54 Stat. 1151; Hearings, House Committee on Immigration and Naturalization, 76th Cong., 1st Sess., pages 547–548.

24. 8 U.S.C.A. Ch. 11, Subchapter III— Nationality through Naturalization.

24a. 54 Stat. 1151.

24b. Emphasis added.

25. See 1929 Rules, Rule 1, Subdivision O and references thereto, *supra*, notes 12 and 15.

26. See 1929 Rules, Rule 1, Subdivision G, supra, note 12.

27. Annual Report of the Commissioner of Naturalization for Fiscal Year 1927, page 6: "In 116,448 of the cases of personal administrative examinations, the applicants also appeared with their * * * witnesses for the preliminary hearing before members of the naturalization examining service who were designated by the United States district judges to hold such hearings * * *" Similar statements are to be found in the Reports for 1928 (p. 7) and 1929 (p.

repeatedly amending the Nationality Act, including § 733, without any change relating to this practice.

These facts, while not necessarily compelling, lead us to the conclusion that Congress has recognized and approved as reasonable the practice, the regulations which provide for it, and the oath which enhances its effectiveness.[28] It follows that the judgment of conviction on this count must be affirmed.

## II. The First Two Counts

■■■■ 1. Defendant admits that he violated 8 U.S.C.A. § 746(a)(1) when, on May 26, 1945, and June 2, 1945, in a "preliminary hearing" upon his petition for naturalization he falsely stated under oath that he had not been a member of the Communist Party. His sole defense to these counts is that the indictment was barred by the statute of limitations.

2. Before the Act of June 25, 1948,[29] revising the Criminal Code (Title 18), the period of limitations for the prosecution of many crimes had been three years. But former 8 U.S.C.A. § 746(g) had fixed a five-year period as to conduct made a felony in the Nationality Code.[30] The 1948 Act expressly repealed this section, substituting § 3282 of revised Title 18. That new section reads: "Except as otherwise expressly provided by law, no person shall be prosecuted, tried, or punished for any offense, not capital, unless the indictment is found or the information is instituted within three years next after such offense shall have been committed." The Reviser's Note to this section, says that "the 5-year period of limitation for violations of the Nationality Code, provided for in said section 746(g) of title 8, U.S.C. * * * is reduced to 3 years. There seemed no sound basis for considering 3 years adequate in the case of heinous felonies and gross frauds against the United States but inadequate for misuse of a passport or false statement to a naturalization examiner."

8). The Annual Report of the Secretary of Labor for the Fiscal Year 1930 notes the improvement in the administration of the naturalization laws which he attributes in part to " * * * the change in administrative procedure to provide for the examination of applicants and their witnesses *prior* to filing their petitions. This * * * practice has enabled curable defects to be discovered before the candidates and their witnesses have actually filed their petitions for citizenship. These beneficial changes have been in effect since 1921." (Emphasis supplied.)

28. Cf., House Committee Print, 76th Congress, 1st Session (Report proposing a Revision and Codification of the Nationality Laws of the United States). Of 8 U.S.C.A. § 727 (b) the report says at page 38: "This subsection would recognize the practice which has been in operation since the basic Naturalization Act of 1906, providing for Federal administrative supervision of naturalization. The primary purpose in authorizing an administrative agency was to insure that an inquiry would be made in every naturalization case as to the eligibility and fitness of the applicant for citizenship. The courts then and now have no means by which such an inquiry can be made and must rely upon the administrative officers to carry out this important function."

Of 8 U.S.C.A. § 727 (e) authorizing the Commissioner to designate members of the Service to administer oaths in matters relating to the administration of the naturalization laws, the Report states at page 39: "This authority enables the members of the Service so designated to function more efficiently and to expedite the handling of naturalization cases. The authority to administer oaths results in much greater care being exercised by applicants in making statements concerning their qualifications * * *" By its subsequent enactment of this subsection as proposed, we take it that Congress recognized the usefulness of an oath in evoking carefully considered statements as to their qualifications from candidates for citizenship, and these qualifications are to be elicited in the pre-petition administrative examination. See 8 C.F.R. 370.8 *cited supra, note 5.*

29. 62 Stat. 683.

30. 8 U.S.C.A. § 746 (g) reads: "No person shall be prosecuted, tried, or punished for any crime arising under the provisions of this chapter unless the indictment is found or the information is filed within five years next after the commission of such crime."

The Act of June 25, 1948, became effective September 1, 1948.[31] Section 21 of that Act expressly repealed many sections of several statutes, including 8 U.S.C.A. § 746(g). Such a repeal, without more, would have been a legislative pardon or amnesty as to all past offenses under § 746(a)(1).[32] However, the repeal section, Section 21 of the 1948 Act, 18 U.S.C.A. §§ 1–370, p. 275, contained a saving clause preserving "any right or liabilities now existing" under the repealed sections. Were we facing here merely a question of the government's "right" to punish or a defendant's "liability" to punishment, under a repealed substantive section imposing criminal liability for an offense, the answer obviously would be that this saving clause preserved the "right" and "liability" even after September 1, 1948, provided they were not then barred by the statute of limitations. But here the pertinent substantive section, 8 U.S.C.A. § 746(a)(1), under which defendant was indicted, was not repealed. It was retained, with unimportant changes in phraseology, as § 1015(a) of revised Title 18.

However, as previously noted, § 746(g) —the statute of limitations pertaining to offenses under § 746(a)(1)—was repealed; it is designated in the schedule attached to the repeal section—Section 21—of the 1948 Act. The question here, then, is whether the words, "right or liabilities now existing", in the saving clause of that repeal section, included periods of limitation and so served to keep alive the former five-year limitation period with respect to offenses committed within five years of the effective date of the new Act, i. e., September 1, 1948.

The government says it does. The defendant says that, despite the repeal, the five-year period continued to govern from June 25, 1948, when the Act was enacted, until September 1, 1948, when the Act took effect, so that, in that interval, he could have been validly indicted for the crimes he admittedly committed on May 26, 1945, and June 2, 1945, and for which he was indicted in the first two counts. But, says defendant, on and after September 1, 1948, the three-year period governed, and therefore prosecution for those crimes was barred when the indictment was filed on September 28, 1948, i. e., more than three years after the commission of those crimes. For defendant contends that the words, "rights or liabilities now existing", found in § 21 of the 1948 Act, relate only to substantive "rights" and "liabilities," and therefore did not save from the three-year bar of new 18 U.S.C.A. § 3282 any prosecutions not commenced before September 1, 1948.

3. In considering this contention, we must take into account three statutory provisions which were in effect on September 28, 1948, when the indictment was filed: (a) New 18 U.S.C.A. § 3282; (b) § 21 of the 1948 Act; (c) 1 U.S.C.A. § 109. To understand these provisions, we must go into their history.

The Revised Statutes of 1874 contained the following sections:

"Sec. 5598. All offenses committed, and all penalties or forfeitures incurred under any statute embraced in said revision prior to said repeal, may be prosecuted and punished in the same manner and with the same effect, as if said repeal had not been made.

"Sec. 5599. All acts of limitation, whether applicable to civil causes and proceedings, or to the prosecution of offenses, or for the recovery of penalties or forfeitures, embraced in said revision and covered by said repeal, shall not be affected thereby, but all suits, proceedings or prosecutions, whether civil or criminal, for causes arising, or acts done or committed prior to said repeal, may be commenced and prose-

31. See § 20 of the 1948 Act, 18 U.S.C.A. §§ 1–370, p. 275.

32. United States v. Chambers, 291 U.S. 217, 223, 54 S.Ct. 434, 78 L.Ed. 763; Yeaton v. United States, 5 Cranch 281, 283, 3 L.Ed. 101; Maryland v. B. & O. R. Co., 3 How. 534, 11 L.Ed. 714; United States v. Tynen, 11 Wall. 88, 95, 20 L.Ed. 153; Hertz v. Woodman, 218 U. S. 205, 216, 30 S.Ct. 621, 54 L.Ed. 1001; United States v. Reisinger, 128 U.S. 398, 401, 9 S.Ct. 99, 32 L.Ed. 480; Landen v. United States, 6 Cir., 299 F. 75, 78.

cuted within the same time as if said repeal had not been made."

"Sec. 13. The repeal of any statute shall not have the effect to release or extinguish any penalty, forfeiture, or liability incurred under such statute, unless the repealing act shall so expressly provide, and such statute shall be treated as still remaining in force for the purpose of sustaining any proper action or prosecution for the enforcement of such penalty, forfeiture, or liability."[33]

The significant point, for our purposes, is that Congress considered a separate section—§ 5599—essential to preserve statutes of limitation: It did not consider them saved (1) by the general saving clause, § 13, which included the words "any liability"; or (2) as to criminal "offenses," by the specific saving clause, § 5598.

In 1909, in enacting the Criminal Code,[34] Congress—without repealing R.S. sections 13, 5598 and 5599—included the following two sections which, in slightly altered form, corresponded in wording to sections 5598 and 5599, and which recognized the same distinction between criminal "offenses" and statutes of limitation.

"§ 533. All offenses committed, and all penalties, forfeitures, or liabilities incurred prior to January 1, 1910, under any law embraced in, or changed, modified, or repealed by sections 1 to 553, 567, 568, and 571 to 573 of this title, may be prosecuted and punished in the same manner and with the same effect as if the said sections had not been passed.

"§ 534. All acts of limitation, whether applicable to civil causes and proceedings, or for the recovery of penalties or forfei-tures, embraced in, modified, changed, or repealed by sections 1 to 553, 567, 568, and 571 to 573 of this title, shall not be affected thereby; and all suits or proceedings for causes arising or acts done or committed prior to January 1, 1910, may be commenced and prosecuted within the same time and with the same effect as if said repeal had not been made."[35]

4. By the Act of March 3, 1933,[36] Congress repealed, as obsolete, many sections of the Revised Statutes, including R.S. § 5598. But R.S. § 5599, which, at first both Houses had proposed to repeal, was retained, on the suggestion of the Secretary of War and the Attorney General.[37] The Secretary said that, because of Campbell v. Holt, 115 U.S. 620, 6 S.Ct. 209, 29 L.Ed. 483, "repeal of that section might, and probably would, revive certain claims arising in the Civil War and since, now barred by limitation." Significantly he added, "It is thought that the language of the concluding proviso of § 3 of H.R. 9877[38] would not avoid this result, *since that proviso refers only to 'rights' and 'liabilities' and not to remedies, recourse to which may be barred by limitations.*"[39] Section 3, to which he referred, became Section 3 of the 1933 Act. It read: "No inference shall be raised by the enactment of this Act that the sections of the Revised Statutes repealed by this Act were in force or effect at the time of such enactment: Provided, however, That any *rights or liabilities existing under such repealed sections* shall not be affected by their repeal."[40] The Attorney General concurred in the recommendation that R.S. § 5599 be retained.[41] It should be noted that Section 3 of the 1933 Act, regarded

33. This section was taken over from the Act of February 25, 1871, 16 Stat. 432.

34. 35 Stat. 1159.

35. These sections were repealed by the Act of January 25, 1948.

36. 47 Stat. 1428.

37. See Senate Report No. 1205, 72nd Cong. 2d Sess.

38. The proposed repeal statute.

39. Emphasis added.

40. Emphasis added.

41. He further recommended that "§ 5599 should be rewritten, bringing it up to date, and then re-enacted and placed in one of the supplements in order to preserve the rights of the Government protected by limitations prescribed in legislation enacted not only prior to 1873 but since then, and particularly since the World War, which World War legislation is somewhat similar to the above-mentioned legislation enacted following the Civil War." Sen.Rep.No.1205, 72nd Cong., 2d Sess. Congress has not adopted this recommendation.

as not affecting limitations statutes, is almost identical with § 21 of the 1948 Act.

5. In 1947,[42] both R.S. § 13 and § 5599 were incorporated in the U.S.C.A., as 1 U.S.C.A. §§ 109 and 110. Since § 110—which covers only repeals embraced in the Revised Statutes of 1874—cannot conceivably apply to the repeal in 1948 of 8 U.S.C.A. § 746(g), we turn to § 109, formerly R.S. § 13.[43]

As we have already pointed out, because this section was made part of the Revised Statutes of 1874 together with § 5599, we think Congress did not regard § 13, now 1 U.S.C.A. § 109, as covering the subject of statutes of limitation. Moreover (in line with the views expressed by the Secretary of War above quoted), the Supreme Court, in three cases interpreting former § 13, has held that it saves existing substantive rights and liabilities from repeal but does not preserve "remedies" or "procedure" prescribed in the repealed statute.

In Great Northern Railway Co. v. United States, 208 U.S. 452, 28 S.Ct. 313, 317, 52 L.Ed. 567, this question arose: The Elkins Act of 1903 had been amended in June 1906 by the Hepburn Act, 49 U.S.C.A. § 41 et seq., which changed the procedure before the Interstate Commerce Commission and modified the means of enforcing the Commission's orders in the courts. Section 10 of the Hepburn Act provided: "That all laws and parts of laws in conflict with the provisions of this Act are hereby repealed, but the amendments herein provided for shall not affect causes now pending in courts of the United States, but such causes shall be prosecuted to a conclusion in the manner heretofore provided by law." The defendants were indicted in November 1906, after enactment of the Hepburn Act but for violations of the Elkins Act which had occurred in 1905. The defendants contended that the indictment was barred by the Hepburn Act because the indictment was not pending when that Act became a law. They argued that new § 10 was inconsistent with R.S. § 13 which was therefore wholly inapplicable, so that the only rights and liabilities saved were those described in new § 10, i. e., those with respect to which suits were pending when the new statute became effective. The Court rejected this argument. It said that R.S. § 13 and new § 10 dealt with different subjects: (1) R.S. § 13 preserved only the liabilities incurred for past offenses under the repealed statute, and did not preserve the old remedies. (2) New § 10 preserved the old remedies, but only as to cases pending in the courts; as to other cases—including prosecutions (for past offenses) saved by R.S. § 13—the remedies under the new statute would apply.[44]

In Hertz v. Woodman, 218 U.S. 205, 218, 30 S.Ct. 621, 625, 54 L.Ed. 1001, the Court said: "The repealing act here involved includes a saving clause, and if it necessarily, or by clear implication, conflicts with the general rule declared in § 13, the latest expression of the legislative will must prevail. In the case of Great Northern Railway Company v. United States * * * the question was whether the saving clause in the Hepburn act was so plainly in conflict with the rule of construction found in § 13 as to limit the actions or liabilities saved to those enumerated therein; but the court held that, as the *later clause applied to remedies and procedure, it was not, by implication, in conflict with the general provision of § 13,*

---

42. 61 Stat. 633.

43. In U. S. v. Reisinger, 128 U.S. 398, 402, 9 S.Ct. 99, 32 L.Ed. 480, the Court said that R.S. § 13 was intended to apply when Congress repealed a statute not repealed by the repeal clause of the Revised Statutes of 1874.

44. The Court (per Chief Justice White) said that the provision of § 10 of the Hepburn Act "as to pending causes was solely addressed to the remedies to be applied in the future carrying on of such cases"; that the Congressional purpose was "to leave cases pending in the courts to be prosecuted under the prior remedies, thus causing the new remedies created to be applicable to all controversies not at the time * * * pending in the courts"; and that the *intent of § 10 was* to "prevent the application of the new *remedies to causes then pending * * * a result which would not necessarily have followed without the direction in question.*" (Emphasis added.)

*which saved penalties, forfeitures, and liabilities."* [45]

In Hallowell v. Commons, 239 U.S. 506, 36 S.Ct. 202, 203, 60 L.Ed. 409, a suit had been begun to establish title to an allotment made to an Indian. The determination of such questions had at one time been left exclusively to the Secretary of Interior, but subsequently this power was taken from the Secretary and transferred to the federal courts. Thereafter, and while the suit was pending, the exclusive power to pass on such issues was again given to the Secretary. The statute made no exception for pending litigation. It was urged that, under R.S. § 13, the statute should be construed so as to save the pending suit. The Supreme Court, answering this contention said: "It made his [the Secretary's] jurisdiction exclusive in terms, it made no exception for pending litigation, but purported to be universal, and so to take away the jurisdiction that for a time had been conferred upon the courts of the United States. The appellant contends for a different construction on the strength of Rev.Stats. § 13, * * * that the repeal of any statute shall not extinguish any liability incurred under it (Hertz v. Woodman, 218 U.S. 205, 216, 30 S.Ct. 621, 54 L.Ed. 1001, 1006), and refers to the decisions upon the statutes concerning suits upon certain bonds given to the United States (U. S. Fidelity & Guaranty Co. v. United States, 209 U.S. 306, 28 S.Ct. 537, 52 L.Ed. 804). But, apart from a question that we have passed, whether the plaintiff even attempted to rely upon the statutes giving jurisdiction to the courts in allotment cases, the reference of the matter to the Secretary, unlike the changes with regard to suits upon bonds, *takes away no substantive right,* but simply changes the tribunal that is to hear the case." [46]

Since 1 U.S.C.A. § 109, formerly R.S. § 13, saves merely substantive "rights" and "liabilities," we think it does not save limitation statutes as to past offenses. For usually, a statute of limitations is considered no part of a "right" or "liability," but as affecting the "remedy" only.[47] On that basis, it has been held that, until the expiration of the period named in such a statute, the period may validly be lengthened or shortened by a later statute,[48] and that, where no criminal liability is involved,[49] the legislature may revive a right barred by a former statute of limitations.[50] In other words—except in the unusual instances where the statute creating a substantive right makes the period of limitation a part or qualification of the right itself [51]—a limitation statute establishes no vested substantive right or unalterable sub-

---

45. Emphasis added.

46. Emphasis added.

47. Mattson v. Department of Labor, 293 U.S. 151, 155, 55 S.Ct. 14, 79 L.Ed. 251; Orr v. United States, 2 Cir., 174 F.2d 577, 580; cf. City of Campbell v. Haverhill, 155 U.S. 610, 618, 15 S.Ct. 217, 39 L.Ed. 280; Bank of United States v. Donnally, 8 Pet. 361, 372, 8 L.Ed. 974; Brent v. Bank of Washington, 10 Pet. 596, 617, 9 L.Ed. 547; Central Hanover Bank & Trust Co. v. United Traction Co., 2 Cir., 95 F.2d 50, 55.

48. Campbell v. Holt, 115 U.S. 620, 6 S. Ct. 209, 29 L.Ed. 483; Mattson v. Dept. of Labor, 293 U.S. 151, 155, 55 S.Ct. 14, 79 L.Ed. 251; Terry v. Anderson, 95 U.S. 628, 633, 24 L.Ed. 365; Falter v. U.S., 2 Cir., 23 F.2d 420, 425–426, certiorari denied 277 U.S. 590, 48 S.Ct. 528, 72 L.Ed. 1003; Orr v. U. S., 2 Cir., 174 F.2d 577, 580; U. S. v. Ganoposki, D. C., 72 F.Supp. 982, 983; cf. Wilson v. Iseminger, 185 U.S. 55, 22 S.Ct. 273, 46 L.Ed. 804; Canadian Northern Ry. Co. v. Eggen, 252 U.S. 553, 562, 40 S.Ct. 402, 64 L.Ed. 713; Chase Sec. Corp. v. Donaldson, 325 U.S. 304, 313, 316, 65 S.Ct. 1137, 89 L.Ed. 1628.

Where, as to civil rights, the period is shortened, a reasonable time must be left in which the action may be commenced. Terry v. Anderson, supra; Wilson v. Iseminger, supra.

49. Falter v. U. S., 2 Cir., 23 F.2d 420, 425.

50. See also, Mattson v. Dept. of Labor, supra; Terry v. Anderson, supra; Chase Sec. Corp. v. Donaldson, supra.

51. See, e.g., Cent. Vermont Ry. v. White, 238 U.S. 507, 511, 35 S.Ct. 865, 59 L. Ed. 1433; Atlantic Coast Line R. v. Burnette, 239 U.S. 199, 36 S.Ct. 75, 60 L.Ed. 226; The Harrisburg, 119 U.S. 199, 214, 7 S.Ct. 140, 30 L.Ed. 358; cf. Osbourne v. U. S., 2 Cir., 164 F.2d 767, 768, 769.

stantive liability.[52] We know, of course, that the words "substance," "procedure," and "remedies" have no fixed, invariant, meanings, and that what they signify depends upon the particular context.[53] We think, however, that, for the reasons we have canvassed, the context of 1 U.S.C.A. § 109 and § 21 of the 1948 Act shows that they were not intended to include, in "rights" or "liabilities," statutes of limitation.[54]

6. Language necessary to save both substantive "rights and liabilities" and their remedies, including statutes of limitation, has often been used where that was the Congressional purpose. Thus in the 1906 Nationality Act Congress said: "For the purpose of the prosecution of all crimes and offenses against the naturalization laws of the United States which may have been committed prior to the date when this Act shall go into effect, the existing naturalization laws shall remain in full force and effect." [55] Substantially the same language appears in the 1926 and 1940 Naturalization Acts.[56] Had Congress had a similar intention here, "it would have been so easy to have said so." [57]

7. We note, without adopting or rejecting, this additional suggested ground

52. See Chase Sec. Corp. v. Donaldson, 325 U.S. 304, 314, 65 S.Ct. 1137, 1142, 89 L.Ed. 1628: "The abstract logic of the distinction between substantive rights and remedial or procedural rights may not be clear-cut, but it has been found a workable concept to point up the real and valid difference between rules in which stability is of prime importance and those in which flexibility is a more important value."

We think that the discussion in Guaranty Trust Co. v. York, 326 U.S. 99, 108–109, 65 S.Ct. 1464, 89 L.Ed. 2079, of "substance" and "procedure" (with particular respect to the effect of a state statute of limitations in a federal diversity equity suit) has no bearing here.

The question whether a substantive "right" can exist when no "remedy" exists for its enforcement has given rise to much disputation. See, e.g., the majority and dissenting opinions in Jacobus v. Colgate, 217 N.Y. 235, 111 N.E. 837; Holmes, J., in The Western Maid, 257 U.S. 419, 433, 42 S.Ct. 159, 66 L.Ed. 299; Holmes, The Common Law (1881), 214, 300–303, 317; Holmes, The Path of the Law, 10 Harvard L.Rev. 457 (1897), reprinted in Holmes, Collected Legal Papers (1921), 167-171-174; Holmes, Book Notices and Uncollected Letters and Legal Papers (1936) 204; Hammond-Knowlton v. U. S., 2 Cir., 121 F.2d 192, 205 note 37; Buckland, Some Reflections on Jurisprudence (1945), 97-106; Paton, Jurisprudence (1946) 115; In re Fried, 2 Cir., 161 F.2d 453, 463 and notes 25 to 28, 1 A. L.R.2d 996; Cohen, Law and The Social Order (1933) 100–102; cf. Seagle, The Quest for Law (1941) 272; Fuller, The Problems of Jurisprudence (1949) 71-102.

In cases where an obligation is barred by the running of the statute of limitations, and the obligor then promises without new consideration to discharge the obligation, the courts, using divers locutions, get around the difficulty that the obligee's substantive "right" remained in existence although it was unenforceable until the new promise occurred. See, e.g., Fuller, Basic Contract Law (1947) 430–442.

In that context, and also when a new statute lengthens the period of limitation after the period named in the previous statute has expired, the courts have often differentiated the "right" and the "remedy."

53. See e.g., Cook, "Substance" and "Procedure" in The Conflict of Laws, 42 Yale L.J. (1933) 333.

54. The Government in its brief says that the Rev.Stats. of 1874 "contained § 5598, which was a general savings clause preserving *substantive* rights and liabilities, and sec. 5599 saving all acts of limitation relative to offenses committed under statutes repealed by the Revised Statutes." (Emphasis added.) The brief speaks similarly of sections 343 and 344 of the 1909 Act.

55. 34 Stat. 603, § 25.

56. 44 Stat. 709, 710, § 4 (c); 54 Stat. 1137, 1168, Sec. 347, 8 U.S.C.A. § 747.

57. See, e.g., Baltimore & P. Railroad Co. v. Grant, 98 U.S. 398, 403, 25 L.Ed. 231; National Bank v. Matthews, 98 U.S. 621, 627, 25 L.Ed. 188; Farrington v. Tennessee, 95 U.S. 679, 689, 24 L.Ed. 558; Vicksburg, S. & P. RR. Co. v. Dennis, 116 U.S. 665, 670, 6 S.Ct. 625, 29 L.Ed. 770; U. S. v. Chase, 135 U.S. 255, 259, 10 S.Ct. 756, 34 L.Ed. 117; U. S. v. Koch, C.C., 40 F. 250, 252; In re Columbia Tobacco Co., 2 Cir., 121 F.2d 641, 643; Commissioner v. Estate of Beck, 2 Cir., 129 F.2d 243, 245.

256

for the conclusion that the three-year statute governs: The Reviser's Note to § 3282 of new 18 U.S.C.A. states: "Section 582 of title 18, U.S.C., 1940 ed., and section 746(g) of title 8, U.S.C., 1940 ed., * * * were consolidated. * * * The proviso contained in the act of 1927 [i. e., 18 U.S.C. § 582] 'That nothing herein contained shall apply to any offense for which an indictment has been heretofore found or an information instituted, or to any proceedings under any such indictment or information,' was omitted as no longer necessary."[58] This may mean that new § 3282 includes all that had been contained in the omitted proviso, just as if the proviso had been re-enacted in § 3282. If so, it is arguable that, since there were saved only those proceedings, for past offenses, which had been begun before the effective date of the new Act, Congress did not intend to save proceedings—like that in the present case—not yet begun on that date.[59]

8. The government contends, however, that, in any event the War Time Suspension of Limitations Act[60] preserved its right to prosecute this action. That Act, so far as pertinent, is substantially the same as the Acts interpreted by the Supreme Court in United States v. Noveck, 271 U.S. 201, 46 S.Ct. 476, 70 L.Ed. 904,[61] United States v. McElvain, 272 U.S. 633, 47 S.Ct. 219, 71 L.Ed. 451,[62] and United States v. Scharton, 285 U.S. 518, 52 S.Ct.

58. Former 18 U.S.C.A. § 582 derived from R.S. § 1044, enacted in 1876, which extended the period of limitations for all offenses not capital to three years, with the proviso. "This act shall not have effect to authorize the prosecution trial or punishment for any offense, barred by the provisions of existing laws" 19 Stat. 32. In 1921, this section was amended to extend the period of limitations for offenses involving fraud against the United States to six years. The Amendment provided: "This Act shall apply to acts, offenses, or transactions where the existing statute of limitations has not yet fully run, but this proviso [extending the period to six years] shall not apply to acts, offenses, or transactions which are already barred by the provisions of existing laws" 42 Stat. 220. In 1927, Congress repealed this 1921 Amendment, and changed the proviso to read: "Nothing herein contained shall apply to any offense for which an indictment has been heretofore found or an information instituted, or to any proceedings under any such indictment or information" 45 Stat. 51.

59. In Lehigh Valley R. Co. v. Comar, 2 Cir., 151 F. 559, 560, it was said, referring to a state statute: "The specific provision in said section that it should not affect any pending action or proceeding must be construed as implying that it does affect all existing rights of action in which suit has not been brought. The contrary construction would render the provision as to pending actions entirely superfluous, because, if the statute did not apply to existing causes of action, a fortiori, it could have no application * * * after an action had been brought thereon."

This same a fortiori reasoning was used by Holmes, J., in Washington Home for Incurables v. American Security Co., 224 U.S. 486, 490, 32 S.Ct. 554, 56 L.Ed. 854.

We also note the suggestion that, when there is doubt concerning the effect of a savings clause on a criminal proceeding, the clause should be strictly construed in favor of the accused. U. S. v. One Airplane, D.C., 23 F.2d 500.

60. It is now 18 U.S.C.A. § 3287. It reads: "When the United States is at war the running of any statute of limitations applicable to any offense (1) involving fraud or attempted fraud against the United States or any agency thereof in any manner, whether by conspiracy or not, or (2) committed in connection with the acquisition, care, handling, custody, control or disposition of any real or personal property of the United States, or (3) committed in connection with the negotiation, procurement, award, performance, payment for, interim financing, canccIation, or other termination or settlement, of any contract, subcontract, or purchase order which is connected with or related to the prosecution of the war, or with any disposition of termination inventory by any war contractor or Government agency, shall be suspended until three years after the termination of hostilities as proclaimed by the President or by a concurrent resolution of Congress."

The President proclaimed the termination of hostilities on December 31, 1946, Proclamation No. 2714. See 12 F.R. 1, 50 U.S.C.A.Appendix, § 601 note.

61. Perjury in an income tax return.

62. False income tax return.

416, 76 L.Ed. 917.[63] As so interpreted, it suspends a statute of limitations only when fraud or attempted fraud against the United States (or one of its agencies) "is an ingredient under the statute defining the offense," and does not, absent such a statutory definition, apply to perjury or false swearing, even when the United States is directly interested.[64] Nothing in 8 U.S.C.A. § 746(a) (1), under which defendant was indicted, makes fraud an ingredient of the crime.

Accordingly, we reverse as to the first two counts, but affirm as to the third count. Since the two-year jail sentences on all three counts run concurrently, the only practical effect of the decision is to relieve defendant of the $1000 fine imposed as to the first count.

---

63. Attempt to evade taxes by falsely understating taxable income.

64. In U. S. v. Gilliland, 312 U.S. 86, 61 S. Ct. 518, 85 L.Ed. 598, the offense was so defined as to make fraud an ingredient.

So, too, in Gottfried v. U. S., 2 Cir., 165 F.2d 360 as we there interpreted the statute creating the crime. See also Marzani v. U. S., 83 U.S.App.D.C. 78, 168 F.2d 133.